**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Paula Lynn ROBINSON,**
**Defendant–Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Pete ROBINSON, a/k/a Jerry,**
**Defendant–Appellant.**

**Nos. 90–3302, 90–3324.**

United States Court of Appeals,
Eleventh Circuit.

July 5, 1991.

A. Russell Smith, Jacksonville, Fla., for Paula Lynn Robinson.

Daniel A. Smith, Jacksonville, Fla., for Pete Robinson.

Michelle McCain Heldmyer, Asst. U.S. Atty., Jacksonville, Fla., for U.S.

Before ANDERSON and DUBINA, Circuit Judges, and GIBSON *, Senior Circuit Judge.

DUBINA, Circuit Judge:

Appellants, Paula Lynn Robinson and Pete Robinson, appeal separately their sentences imposed by the United States District Court for the Middle District of Florida for their involvement in a drug conspiracy.[1]

## I. BACKGROUND FACTS

Paula Lynn Robinson (Paula Robinson), Pete Robinson, and sixteen codefendants were involved in a large-scale crack cocaine distribution ring in Jacksonville, Florida, between 1986 and 1989. The crack cocaine distribution ring was operated from a business known as the ABC Junkyard, which was owned by the Robinson family. Customers would drive to the front of the business and one of the many sellers would approach the window of the automobile and sell the passenger crack cocaine. Three to five kilograms of crack cocaine were distributed each week from the ABC Junkyard.

Members of the narcotics section of the Jacksonville Sheriff's Office made numerous arrests for individual crack cocaine sales during the period of the conspiracy.

---

* Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

1. The two cases, numbered 90–3302 and 90–3324, were consolidated on appeal.

Eventually, an undercover police officer gained the confidence of the organization and was able to make in excess of 30 purchases of crack cocaine from the junkyard area, including a purchase of 4.9 grams of cocaine from Paula Robinson.

## II. PROCEDURAL HISTORY

A twenty-eight count indictment was returned against the Robinsons and other individuals for their participation in the crack cocaine distribution ring. Paula Robinson filed a plea agreement and pled guilty to a lesser included offense which charged her with distribution of crack cocaine on one occasion. The Presentence Investigation Report (PSI) represented that Paula Robinson's total offense level was 34 and her criminal history category II, which resulted in a sentence range of 168 to 210 months imprisonment under the United States Sentencing Guidelines (U.S.S.G.). Paula filed written objections to the PSI regarding the base offense level calculations. She argued that there was no evidence that she enlisted the aid of coconspirators to sell cocaine or that she was involved in more than one sale. She claimed that she was not part of an overall conspiracy; however, the government presented evidence at the sentencing hearing that showed Paula Robinson belonged to a conspiracy that distributed thousands of grams of crack cocaine per week. The court adopted the factual findings in the PSI and sentenced Paula Robinson to 189 months imprisonment with three years supervised release and a $50.00 special assessment.

Pete Robinson also filed a plea agreement and pled guilty to count eight of the indictment which charged him with distribution of a cocaine base. The PSI represented that Pete Robinson's total offense level was 34 and his criminal history category VI, which resulted in a sentence range of 262 to 327 months imprisonment under the U.S.S.G. Since Pete Robinson pled guilty to a twenty-year drug offense, the guidelines sentence was calculated to be twenty years. Pete Robinson filed written objections to the PSI claiming that he should have been classified as a career offender as set forth in U.S.S.G. § 4B1.1. The district court disagreed with Pete Robinson and sentenced him to 18 years imprisonment, with three years supervised release and a $50.00 special assessment.

## III. DISCUSSION

Paula Robinson raises two issues on appeal: (1) whether an ex post facto application of U.S.S.G. § 1B1.3 occurred when the district court calculated her base offense level; and (2) whether the district court erred in finding an aggregate amount of cocaine base in excess of 500 grams. Pete Robinson's sole issue on appeal is whether the district court erred in its calculation of his criminal history category.

█ This court's review of the Robinsons' sentences is governed by 18 U.S.C. § 3742(d). The application of the law to sentencing issues is subject to de novo review. *United States v. Chotas*, 913 F.2d 897 (11th Cir.1990) (per curiam), *cert. denied*, — U.S. —, 111 S.Ct. 1421, 113 L.Ed.2d 473 (1991).

### A. *Ex post facto application*

Paula Robinson contends that the district court applied U.S.S.G. § 1B1.3 to the calculation of her base offense level as it existed at the time of the sentencing, not at the time of the commission of the offense, and that this constituted an ex post facto application of the guidelines. At the time of the commission of the offense, § 1B1.3, Application Note 1 (1988), provided:

> Conduct "for which the defendant is otherwise accountable," as used in subsection (a)(1), includes conduct that the defendant counselled, commanded, induced, procured, or willfully caused. If the conviction is for conspiracy, it includes conduct in furtherance of the conspiracy that was known to or was reasonably foreseeable by the defendant.

On November 1, 1989, the relevant portion of § 1B1.3, Application Note 1, was amended to provide:

> In the case of criminal activity undertaken in concert with others, whether or

not charged as a conspiracy, the conduct for which the defendant "would otherwise be accountable" also includes conduct of others in furtherance of the execution of the jointly undertaken criminal activity that was reasonably foreseeable to the defendant.

Thus, under the 1989 amendment, a defendant could be held accountable for the quantities of cocaine sold by codefendants whether or not he or she had pled guilty to a conspiracy charge. Paula Robinson admits that 18 U.S.C. § 3553(a)(4) states that the court should consider the Guidelines policy statements that are in effect on the date of sentencing; however, she claims that since this amendment increases her sentence calculation, it is an ex post facto application of the sentencing guidelines and thus a constitutional violation. *See Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987).

As stated in *Miller*, the critical elements that must be present for a law to fall within the ex post facto prohibition are "first, the law 'must be retrospective, that is, it must apply to events occurring before its enactment'; and second, 'it must disadvantage the offender affected by it.'" 482 U.S. at 430, 107 S.Ct. at 2451 (quoting *Weaver v. Graham*, 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981)). Paula Robinson claims that both elements are met in this case because the application of the November 1, 1989 amendment results in a base offense level of 36 as opposed to the pre-amendment provisions which would result in a base offense level of 24. The ensuing detriment is to raise her sentencing range from 46 to 57 months to the range within which she was sentenced—168 to 210 months.

■ There is no question that the January 15, 1988 amendment to § 1B1.3 applies to Paula Robinson's conviction because her offense was committed in July 1989. Furthermore, the commentary that accompanied § 1B1.3 in 1988 provided:

[C]onduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range. The range of information that may be considered at sentencing is broader than the range of information upon which the applicable sentencing range is determined.

U.S.S.G. § 1B1.3 comment. (backg'd). The Sentencing Commission specifically addresses drug cases and states that "in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." U.S.S.G. § 1B1.3 comment. (backg'd). It is evident from the commentary to § 1B1.3 that the Sentencing Guidelines, at the time of Paula Robinson's offense, intended for relevant conduct used in determining the base offense level of the individual defendant to include all acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction.

■ The government contends that the November 1, 1989 amendment was intended as a clarification of the January 15, 1988 amendment. Section § 1B1.3 was further clarified by the Sentencing Commission to specifically include in its relevant conduct considerations "conduct for which the defendant 'would be otherwise accountable,' ... whether or not charged as a conspiracy." U.S.S.G. § 1B1.3, Application Note 1 (Nov. 1989). The clear intent of the Sentencing Commission was not to make any substantive changes, but rather, to express its constant intent throughout the application of § 1B1.3; i.e., to ensure that all relevant conduct be considered upon sentencing of all defendants pursuant to the U.S.S.G. Since the change in the November 1, 1989 amendment was not substantive and did not "substantially disadvantage" Paula Robinson, it should not be considered a change subject to ex post facto prohibition. *Miller*, 482 U.S. at 433, 107 S.Ct. at 2452.

■ Under either the January 15, 1988 amendment or the November 1, 1989 amendment, Paula Robinson would be accountable for all drug quantities if they

were "part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2) (Nov. 1990). It is not clear from the record which amendment the district court relied upon in determining the base offense level for Paula Robinson; however, the district court correctly held that the common scheme or plan was present and that Paula Robinson played a part in the drug operation. According to *United States v. Wilson,* 884 F.2d 1355 (11th Cir.1989), the amount of cocaine should be derived from "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." 884 F.2d at 1357 (quoting U.S.S.G. § 1B1.3(a)(2) (Nov. 1, 1990)). Thus, Paula Robinson was not substantially disadvantaged by the November 1, 1989 amendment since the amount of cocaine sold by the conspiracy was calculated at the same amount (500 grams) based upon her "relevant conduct" under either amendment. U.S.S.G. § 1B1.3.

B. *Calculated amount of cocaine base*

■ Paula Robinson argues that the district court erred in finding an aggregate amount of cocaine base in excess of 500 grams. This court reviews the trial court's determination of the quantity of drugs used to establish a base offense level for sentencing purposes under the clearly erroneous standard. *United States v. Davis,* 902 F.2d 860, 861 (11th Cir.1990).

■ Paula Robinson claims that no evidence was produced at the sentencing hearing and no evidence was contained in the PSI which indicated that the base amount of cocaine was 500 grams. Paula Robinson fails to acknowledge that her own testimony at trial supports the 500 grams base amount calculated by the district court. Paula Robinson testified that she sold $20.00 worth or more of crack cocaine to each customer, sometimes selling more than 5 grams to a customer, three or four

days a week, six or seven hours a day, for approximately a year and a half. Paula Robinson also admitted that she knew at the time that everyone at the junkyard was selling crack cocaine. Based upon her own testimony and that of other witnesses, the district court did not err in finding the aggregate amount of cocaine base to be 500 grams and Paula Robinson's base offense level to be 36.[2]

C. *Career Offender*

■ Pete Robinson raises in this appeal the anomalous position that the Sentencing Guidelines' "Career Offender" provision in § 4B1.1(C) should control his sentence because he has the requisite number of prior felony convictions. By taking this position, Pete Robinson's offense level would be 32, which, with a criminal history category of VI and reductions for acceptance of responsibility and "minor" role in the offense, would result in a sentencing range of 140 to 175 months. That range is in contrast to the otherwise applicable guideline range of 210 to 262 months based on the quantity of crack cocaine with which he was involved and for which he was sentenced. The government contends that Pete Robinson does not have the requisite prior felony convictions to qualify as a career criminal, but even if he does, the guidelines clearly indicate that the career offender provision does not apply where the offense level in the § 4B1.1 table is lower than the otherwise applicable offense level.

The guidelines suggest that application of the career offender provision is not appropriate where it would result in a lower sentence than would otherwise be applicable. First, § 4B1.1 states, "If the offense level for a career criminal from the table below is greater than the offense level otherwise applicable, the offense level from the table below shall apply." U.S.S.G. § 4B1.1 (Nov. 1, 1990). It would appear that the negative corollary of that statement must also apply; i.e., if the offense level from the career offender table is less

---

**2.** Paula Robinson testified that she sold $300 to $400 a day of crack cocaine and each sale contained 4 to 4.9 grams. Also, she testified that she sold this amount three to four times a week.

The conspiracy lasted 78 weeks. Twelve grams a week for 78 weeks amounts to 936 grams of cocaine sold over the period of the conspiracy.

than the otherwise applicable offense level, the greater of the offense levels shall apply. Second, such a result is logical given that § 4B1.1 is a sentence enhancement provision rather than one of reduction. This interpretation is strongly supported by Congress' intention that career offenders receive a sentence of imprisonment at or near the maximum term authorized by statute. U.S.S.G. § 4B1.1 comment. (backg'd). Since the maximum authorized term of imprisonment for Pete Robinson's conviction is twenty years, the logical interpretation warrants that he be sentenced under the otherwise applicable sentencing range, which more closely approximates the statutory maximum, rather than under the much lower career offender calculation.

### IV. CONCLUSION

The district court correctly calculated the aggregate amount of cocaine to be 500 grams to determine Paula Robinson's base offense level and correctly determined that Paula Robinson's activities were "relevant conduct" under either the 1988 or 1989 amendments to § 1B1.3 of the U.S.S.G. The district court was also correct in sentencing Pete Robinson under the applicable guideline range and not applying the career offender provisions in § 4B1.1 of the U.S.S.G. Accordingly, we affirm the sentences of Pete and Paula Robinson.

AFFIRMED.