UNITED STATES of America, Plaintiff,

v.

Vernon LEWIS, Defendant.

Crim. No. 93–542 (MLP).

United States District Court,
D. New Jersey.

Sept. 29, 1994.

James McMahon, Asst. U.S. Atty., Newark, NJ, for U.S.

Michael J. Sullivan, Asst. Federal Public Defender, Newark, NJ, for defendant.

### OPINION

PARELL, District Judge.

Defendant Vernon Lewis objected to the recommendation of the Probation Office that he be sentenced as a career offender pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 4B1.1. For the following reasons, the Court overruled the objection. The Judgment and Commitment Order containing the sentence was filed on July 21, 1994 and the defendant has appealed.

### I. BACKGROUND

The following pertinent facts appear in the undisputed portions of the Presentence Investigation Report.[1] In this case, on January

---

1. The only disputed portions are two prior convictions which defendant seeks to attack collater-

ally, discussed infra.

ary 24, 1994, defendant entered a plea of guilty to Count Two of a two-count Indictment, each count of which charged him with a separate bank robbery in violation of 18 U.S.C. § 2113(a). The offense charged in Count Two was a robbery at the First Fidelity Bank in North Brunswick, New Jersey on August 17, 1993, in which defendant handed a note to a teller and demanded cash, which he obtained in the amount of $3,126. The parties do not dispute that his related conduct, consisting of a similar bank robbery committed approximately one week earlier, on August 11, 1993 at National Westminster Bank in Perth Amboy, New Jersey in the amount of $855, is considered to be Relevant Conduct under Guideline § 1B1.3.[2]

Defendant has a lengthy history of prior criminal convictions. The Presentence Report indicates that at age 45 he has twelve adult felony convictions, six of which were for robbery or armed robbery. His adult parole was revoked eight times as a result of new criminal convictions or failure to abide by parole conditions. Defendant's juvenile history includes seven offenses, two of which were similar to the present robbery offenses.

The career offender provision of the Guidelines, U.S.S.G. § 4B1.1, provides in pertinent part as follows:

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.[3]

A career offender's criminal history category under the Guidelines is automatically category VI, and the offender's offense level is also often increased. See U.S.S.G. § 4B1.1. Defendant in this case is subject to both of those effects if he is sentenced as a career offender. If one or both of those convictions or the events underlying them were not taken into account in this sentencing, defendant's sentencing range under the Guidelines would be substantially lower.[4]

The Presentence Report indicates that Lewis qualifies as a career offender because (1) he was at least eighteen years old at the time of the instant offense; (2) the instant offense is a felony which is a "crime of violence"; and (3) he has at least two prior

---

**2.** The August 11, 1993 bank robbery was the subject of Count I of the Indictment, which was dismissed on motion of the government at the close of the sentencing hearing pursuant to the plea agreement, but it was stipulated that such conduct remained in the case for purposes of calculating the Guideline range. The effect of the plea agreement is to reduce defendant's statutory exposure from 40 to 20 years, but the Guideline calculation must still include the Count I conduct as Relevant Conduct.

**3.** The edition of the Guidelines Manual effective Nov. 1, 1993 was used in the Presentence Report and was applied by this Court in determining the sentence. The applicability of that edition is disputed by defendant and is addressed in the Discussion section of this opinion.

**4.** His classification as a career offender resulted in a total offense level of 29 [i.e., 32 less 3 points for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and 3E1.1(b)(1) & (2)] and a criminal history category of VI, yielding a Guidelines sentencing range of 151 to 188 months imprisonment. He was sentenced to a term of imprisonment of 168 months [14 years]. If the career offender provisions did not apply, the Presen-

tence Report calculations show that he would have a total offense level of 21 [i.e., 24 less 3 points for acceptance of responsibility] and a criminal history category of V, for a Guideline imprisonment range of 70–87 months. Also, to the degree that one or both of his challenged prior convictions could be removed from his criminal history calculation, that could further reduce his criminal history category and thus his Guideline imprisonment range. However, U.S.S.G. § 4A1.2, Application Note 6, states that "the criminal conduct underlying any conviction that is not counted in the criminal history category score may be considered pursuant to § 4A1.3 (Adequacy of Criminal History Category)." Those provisions, if applicable, provide a sentencing court with the authority to depart upward from the Guidelines range on the ground that a defendant's "criminal history category does not adequately reflect the seriousness of the [his] past criminal conduct or the likelihood that [he] will commit other crimes." U.S.S.G. § 4A1.3. In the present case, although the issue was not reached, the government urged in the alternative that if the Court did permit and sustain defendant's collateral challenges, the Court should depart upward pursuant to those provisions.

felony convictions for crimes of violence.[5] The identified qualifying convictions, all in New Jersey state courts, were as follows:

(1) He pled guilty in April, 1978 to two counts each of robbery, and crime while armed, arising out of two separate grocery store robberies committed in November, 1977, resulting in a 10–year concurrent sentence ["the 1978 Robbery Conviction"];[6]

(2) He pled guilty in December, 1981 to second degree robbery ["the 1981 Robbery Conviction"], arising out of his participation in a bank robbery on July 24, 1981, and was sentenced in February, 1982 to 10 years' imprisonment, concurrent with the sentence for the offense described immediately below;[7]

(3) He pled guilty in December, 1981 to armed robbery ["the 1981 Armed Robbery Conviction"], arising out of his robbery of a grocery store in November, 1981, and was sentenced in February, 1982 to 20 years' imprisonment, concurrent with the sentence for the 1981 Robbery Conviction, above.[8]

Any two of these convictions would suffice to classify Lewis as a career offender. None of these convictions has been ruled invalid, nor does it appear that they were challenged on direct appeal or on petition for habeas corpus.

Lewis does not challenge the 1981 Robbery Conviction, but he does seek to attack the 1978 Robbery Conviction and the 1981 Armed Robbery Conviction for present sentencing purposes. Lewis claims that the 1978 conviction was constitutionally invalid because it was obtained in violation of his rights under *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), in that the court receiving that plea did not fully notify him of the constitutional rights he was waiving by pleading guilty. Also, defendant would seek to establish that the 1981 Armed Robbery Conviction was constitutionally invalid because there was not a sufficient factual basis to support the charge that the offense qualified as an "armed robbery" under then-current state law. It is undisputed that defendant was represented by court-appointed counsel in the cases that led to both of those challenged convictions.

## II. *DISCUSSION*

This Court, in determining the sentence in this case, must first decide whether it has the authority to consider the collateral attacks on prior convictions which are asserted by defendant. It should be noted at the outset that the particular issue presented here is not likely to arise in most future cases, because of Guideline revisions effective November 1, 1993, which are discussed below. De-

---

5. "'Crimes of violence' includes ... robbery...." See U.S.S.G. § 4B1.2, Application Note 2.

6. These offenses were sentenced together on June 5, 1978 and are treated as a single qualifying conviction in the Presentence Report. *See* U.S.S.G. § 4A1.2(a)(2), "[p]rior sentences imposed in related cases are to be treated as one sentence for purposes of § 4A1.1(a), (b), and (c)." Application Note 3 to that section states that "prior sentences are considered related if they resulted from offenses that ... were consolidated for ... sentencing." Also, since defendant's incarceration for those offenses extended until March 17, 1981, they fall within the qualifying time period pursuant to U.S.S.G. § 4A1.1(a), Application Note 1, which states, "[a] sentence imposed more than fifteen years prior to the defendant's commencement of the instant offense is not counted unless the defendant's incarceration extended into this fifteen-year period. *See* § 4A1.2(e)."

7. The term "two prior felony convictions" is defined in U.S.S.G. § 4B1.2(3), which provides,

*inter alia,* that "[t]he date that a defendant sustained a conviction shall be the date that the guilt of the defendant has been established, whether by guilty plea, trial, or plea of *nolo contendere.*"

8. Both of the 1981 convictions fall within the qualifying time period pursuant to U.S.S.G. § 4A1.2(e), which provides in pertinent part that "[a]ny prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted...." Also, although the 1981 convictions were sentenced together on February 1, 1982, they are treated as separate qualifying convictions in the Presentence Report, because the offenses were separated by an intervening arrest on July 29, 1981. *See* Application Note 3 to U.S.S.G. § 4A1.2(a)(2), which states, "[p]rior sentences are not considered related if they were for offenses that were separated by an intervening arrest (*i.e.,* the defendant is arrested for the first offense prior to committing the second offense)."

fendant claims that the pre-revision version of the Guidelines which was in effect in August, 1993 at the time of the instant offense is more favorable to him, and accordingly it should be applied in order to avoid a deprivation of his rights under the Ex Post Facto Clause of the Constitution. It is clear that if defendant is correct that the earlier version of the Guidelines is more favorable, he is entitled to the benefit of that version. *See United States v. Cherry,* 10 F.3d 1003, 1014 (3d Cir.1993); *United States v. Seligsohn,* 981 F.2d 1418, 1424 (3d Cir.1992) (both citing *United States v. Kopp,* 951 F.2d 521, 526 (3d Cir.1991) (where guidelines in effect at the time of sentencing impose a harsher penalty than an earlier version of the guidelines in effect at the time of the crime, the sentencing courts must apply the earlier version)). However, this Court does not agree that the earlier version was more favorable, in light of recent developments, for reasons which are explained below.

■ It is settled law in the Third Circuit that courts must sentence qualified defendants pursuant to the career offender provisions of the Guidelines. *United States v. Thomas,* 961 F.2d 1110, 1122 (3d Cir.1992); *United States v. Shoupe,* 929 F.2d 116, 119 (3d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 382, 116 L.Ed.2d 333 (1991). The government bears the burden of proving that a defendant qualifies as a career offender. *United States v. Parson,* 955 F.2d 858, 871 (3d Cir.1992). Once the government satisfies its burden, the defendant bears the burden of establishing by a preponderance of the evidence that the predicate prior convictions are constitutionally invalid. *United States v. Stewart,* 977 F.2d 81, 85 (3d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1433, 122 L.Ed.2d 800 (1993). The constitutionality of this allocation of the burden of proof under a state sentencing enhancement statute similar to § 4B1.1 was upheld by the Supreme Court

in *Parke v. Raley,* —— U.S. ——, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992).

The sentencing court must make a threshold determination whether it has the authority to permit the assertion of a collateral attack in a given case. *See, e.g., United States v. Brown,* 991 F.2d 1162 (3d Cir.1993). The Supreme Court has recently rendered its decision in *Custis v. United States,* —— U.S. ——, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994), which bears upon the issues in this case both directly and indirectly. There the majority held, *inter alia,* in an opinion delivered by Chief Justice Rehnquist, that the Constitution does not confer a right of collateral attack upon prior convictions used for sentence enhancement unless there was a failure to appoint counsel for an indigent defendant or lack of a knowing and voluntary waiver of counsel, in violation of the Sixth Amendment right to counsel as defined in *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). *Id.,* —— U.S. at —— ——, 114 S.Ct. at 1737–39. A discussion of the *Custis* decision is appropriate here, in order to explain how it directly applies and how it otherwise provides judicial guidance in this case.

The provisions of the U.S. Sentencing Guidelines were not at issue in *Custis;* rather, the case arose under the sentencing provisions of the statute of defendant's offense, the Armed Career Criminal Act, 18 U.S.C. § 924(e) ["ACCA"].[9] That statute provided an enhanced penalty for possession of a firearm by a felon, from a 10–year maximum without enhancement to a mandatory minimum of 15 years and a maximum of life imprisonment without parole if the defendant "has three previous convictions ... for a violent felony or a serious drug offense." *Id.,* —— U.S. at ——, 114 S.Ct. at 1734. Defendant sought at his sentencing hearing under the ACCA to attack collaterally the validity of two of his prior state convictions. His contentions were that, as to a 1985 guilty

---

**9.** Petitioner in *Custis* was facing a mandatory minimum sentence of 15 years under the ACCA. His conviction under the ACCA occurred in or after 1991, and the Sentencing Guidelines were in effect at that time. The *Custis* decision makes no reference to the Guidelines. Presumably the reason is that his Guideline range was lower

than the mandatory statutory minimum under the ACCA. *See* U.S.S.G. § 5G1.1(b), "[w]here a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence."

plea for burglary, he had been denied the effective assistance of counsel and his plea was not knowing and intelligent as required by *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); and, as to a 1989 conviction for attempted burglary, he was also denied the effective assistance of counsel and his conviction upon a "stipulated facts" trial was tantamount to a guilty plea without having been adequately advised of his rights.[10]

The district court in *Custis* determined that it could not entertain those challenges to the prior convictions because the sentencing provisions of the ACCA provided no statutory right to challenge such prior convictions, and the Constitution would provide such a right only when there was a complete denial of counsel in the prior proceeding. The Court of Appeals for the Fourth Circuit affirmed, and the Supreme Court granted *certiorari* in order to resolve a split of opinion in the circuits. *Id.*, —— U.S. at ——, 114 S.Ct. at 1735. The decision by the Court of Appeals for the Fourth Circuit was affirmed by a 6/3 majority.

The Supreme Court in *Custis* first looked to the language of the sentencing provisions of the statute to see whether that language expressly authorized such collateral attacks. On that point the Court concluded, "[t]he statute focuses on the *fact* of the conviction and nothing suggests that the prior final conviction may be subject to collateral attack for potential constitutional errors before it may be counted." *Id.*, —— U.S. at ——, 114 S.Ct. at 1736 (emphasis in original). Next, the Court considered and rejected the argument that any such implied right existed under the statute. Exploring the statutory scheme of the Gun Control Act of 1968, of which the ACCA is a part, the Court observed that "[t]he provision that a court may not count a conviction 'which has been ...

set aside' creates a clear negative implication that courts *may* count a conviction that has *not* been set aside." *Id.* (emphasis in original). The Court turned also to other related statutes which did confer such a right. By way of example, the Court cited 21 U.S.C. § 851(c), part of the Comprehensive Drug Abuse Prevention and Control Act, which sets forth specific procedures allowing such challenges, and stated:

> The language of § 851(c) shows that when Congress intended to authorize collateral attacks on prior convictions at the time of sentencing, it knew how to do so. Congress' omission of similar language in § 924(e) indicates that it did not intend to give defendants the right to challenge the validity of prior convictions under this statute.

*Id.* Thus, the Court concluded that the lack of any indication of such intent in the statute in question, and the contrast between that statute and statutes which did "expressly provide avenues for collateral attacks," as well as its decision in *Lewis v. United States*, 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), similarly interpreting a predecessor statute to the ACCA, all "point strongly to the conclusion that Congress did not intend to permit collateral attacks on prior convictions under § 924(e)." *Id.*, —— U.S. at ——, 114 S.Ct. at 1737.[11]

Addressing the constitutional entitlement issue in *Custis*, the Supreme Court rejected petitioner's argument that a court is constitutionally required at sentencing to allow collateral challenges to alleged defects in prior convictions, where such challenges are based alleged defects other than lack of counsel. Initially, the Court reviewed its decisions in *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), and *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30

---

**10.** The latter contention in *Custis* is similar to one of defendant's contentions in this case: Custis claimed that the stipulated facts in that prior conviction established only attempted breaking and entering rather than attempted burglary under state law. Defendant Lewis in this case contends that the facts which supported his plea in the 1981 Armed Robbery Conviction established only robbery rather than armed robbery under state law.

**11.** This type of analytical approach, as employed by the Supreme Court in *Custis*, may appropriately be used by courts interpreting other federal statutes containing sentencing provisions, such as the Guidelines provisions at issue in this case. *See* discussion *infra*.

L.Ed.2d 592 (1972), wherein the Court had recognized that when the right of an indigent defendant to have appointed counsel, as required by *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (state courts) and *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (federal courts), has been violated, the use of any resulting conviction for purposes of sentence enhancement is impermissible. The Court then announced its ruling as follows:

> Custis invites us to extend the right to attack collaterally prior convictions used for sentence enhancement beyond the right to have appointed counsel established in *Gideon.* We decline to do so. We think that since the decision in *Johnson v. Zerbst* more than half a century ago, and running through our decisions in *Burgett* and *Tucker,* there has been a theme that failure to appoint counsel for an indigent defendant was a unique constitutional defect. Custis attacks his previous convictions claiming the denial of effective assistance of counsel, that his guilty plea was not knowing and intelligent, and that he had not been adequately advised of his rights in opting for a "stipulated facts" trial. None of these alleged constitutional violations rises to the level of a jurisdictional defect resulting from the failure to appoint counsel at all.

*Custis,* —— U.S. at ——, 114 S.Ct. at 1738. The Court further explained that the interests in ease of administration and promoting the finality of judgments provides additional support for its constitutional ruling, particularly with reference to guilty pleas, stating:

> These principles bear extra weight in cases in which the prior convictions, such as the one challenged by Custis, are based on

guilty pleas, because when a guilty plea is at issue, "the concern with finality served by the limitation on collateral attack has special force."

*Id.,* —— U.S. at ——, 114 S.Ct. at 1739 (citing *United States v. Timmreck,* 441 U.S. 780, 784, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979)).

The Supreme Court held in *Custis* "that § 924(e) does not permit Custis to use the federal sentencing forum to gain review of his state convictions [because] Congress did not prescribe and the Constitution does not require such delay and protraction of the federal sentencing process." *Id.*[12]

In the present case, defendant Lewis concedes that since he was represented by counsel during the cases which led to the prior convictions in question, he is precluded by the ruling in *Custis* from arguing that he has a constitutional right to obtain collateral review of those convictions in this sentencing proceeding. He also acknowledges that the version of the Guidelines effective November 1, 1993, which was current at the time of this sentencing, precludes him from collaterally attacking those convictions if it applies to him in this case.[13] He asserts, however, that the Guidelines in effect at the time of his offense on August 17, 1993 did provide a statutory right of collateral review, to which he is entitled under U.S.S.G. § 1B1.11(b)(1) in order to avoid a violation of his rights under the Ex Post Facto Clause of the Constitution. U.S. Const., Art. I, Sec. 9[3].[14]

Defendant argues that the version of the Guidelines in effect at the time he committed the instant offense provided him with a statutory right to challenge his prior convictions

12. Justice Souter, joined by Justices Blackmun and Stevens, wrote a powerful dissent in which he thoroughly questioned the majority analysis of both the constitutional entitlement and the statutory authorization issues. —— U.S. at —— ——, 114 S.Ct. at 1739–47. The learned discussion set forth in the dissent demonstrates that these issues are fraught with difficulty and are far from being settled in the evolution of our jurisprudence pertaining to collateral challenges.

13. For a comparison of the November, 1993 version and the preceding version of the pertinent provisions of the Guidelines, *see* discussion *infra.*

14. U.S.S.G. § 1B1.11, as effective in August, 1993 and at present, provides in pertinent part:

(a) The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced.

(b)(1) If the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the *ex post facto* clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed.

on constitutional grounds and, as support for this argument, relies primarily upon the interpretation of this earlier version of the Guidelines by the Court of Appeals for the Third Circuit in *United States v. Brown*, 991 F.2d 1162 (1993). In that case, the defendant pled guilty to a charge of conspiracy to distribute cocaine base. At the defendant's sentencing under the Guidelines, the district court did not permit the defendant to attack the constitutionality of certain prior convictions which were used as a basis for classifying her as a "career offender," which resulted in her increased sentence. The challenges which she had sought to raise involved alleged conflicts of interest of her attorney, which she alleged had resulted in the denial of her constitutional right to effective assistance of counsel. None of her prior felony convictions had been held invalid. The Court of Appeals for the Third Circuit held that under the version of the Guidelines in effect at the time of Brown's sentencing, the district court had the discretion to entertain such a collateral attack.

The Guidelines provision interpreted in *Brown* was U.S.S.G. § 4A1.2, Application Note 6 and related commentary,[15] as originally effective November 1, 1990 and still in effect at the time of Brown's sentencing. That was the same provision in effect when the instant offense was committed. The provision and commentary stated in pertinent part as follows:

*Application Notes:*

. . . .

6. ... [S]entences resulting from convictions that a defendant shows to have been previously ruled constitutionally invalid are not to be counted.

. . . .

*Background:* ... The Commission leaves for court determination the issue of whether a defendant may collaterally attack at sentencing a prior conviction.

U.S.S.G. § 4A1.2, Application Note 6 and Background Note, as effective Nov. 1, 1992.[16]

The Court of Appeals in *Brown* pointed out that "[r]ead alone, [the] language [of Note 6] seems to suggest that all convictions not 'previously ruled constitutionally invalid' should be counted." *Brown*, 991 F.2d at 1165. However, the court also noted that the addition of the "Background" pronouncement caused the courts of appeals to "struggl[e] with the task of interpreting this background note and harmonizing it with Application Note 6 [and that] [m]ost of the courts of appeals have reached the conclusion that these provisions give sentencing courts the discretion to consider or refuse to consider attacks on prior convictions not previously ruled unconstitutional." *Id.* at 1165–1166 (citations omitted). Indeed, observed the court, "[t]hese varying interpretations are hardly surprising in light of the ambiguities in Application Note 6 and the Background Note of U.S.S.G. § 4A1.2." *Id.* at 1166.

Seeking to resolve the ambiguities in the quoted provisions, the Court of Appeals in *Brown* discussed what it identified as two reasonable interpretations. The first would be that "the *Guidelines* neither authorize a sentencing court to entertain constitutional challenges to convictions not previously ruled unconstitutional nor prohibit it from doing so." *Id.* (emphasis added). Under that interpretation, said the court, the Background Note would mean that "the *Commission* was not authorizing constitutional challenges to prior convictions, [but] it recognized that the *Constitution* may entitle defendants to make such challenges under some circumstances ... [and the Background Note thus interpreted would] leave it for the courts to decide when a defendant is *constitutionally entitled* to attack a prior conviction not previously ruled unconstitutional, but that such convictions must be counted for criminal history purposes if it is constitutionally permissible

15. As explained by the court in *Brown*, U.S.S.G. § 4A1.2 is "applicable to the counting of convictions under [U.S.S.G.] § 4B1.1." *Brown, supra*, 991 F.2d at 1165 (citation omitted).

16. Appendix C to the Guidelines Manual, containing all amendments to the Sentencing Guide-

lines Manual, indicates that that provision remained unchanged from Nov. 1, 1990 until Nov. 1, 1993. Brown's plea and sentencing dates apparently fell within that time period, so there was no *ex post facto* issue in the *Brown* case.

to do so." *Id.* (emphasis added).[17] The court in *Brown* opined that "[w]hile this interpretation is reasonable, we do not regard it as the one the Commission most likely intended," in part because the Background Note made no express reference to the Constitution. *Id.* The ruling of the court on this issue was expressed as follows:

> For these reasons, we do not think that the background note was intended to refer to the courts' authority to decide constitutional questions. Rather, it seems more likely, as most of the other courts of appeals have held, that the background note was meant to say that the courts should work out their own procedural rules regarding efforts by defendants to challenge convictions not previously held unconstitutional. If the Commission did not intend this interpretation, it can very easily clarify its intent when it next promulgates Guidelines amendments.

*Id.* Thus, the Court of Appeals in *Brown* was, in effect, holding that it found at least an implied grant of statutory authorization for collateral attack under its interpretation of that version of the Guidelines.

The Sentencing Commission responded to the split of opinion in the circuits on this issue by promulgating a revised version of § 4A1.2, effective November 1, 1993, which provides in pertinent part:

*Application Notes:*

. . . .

6. ... Sentences resulting from convictions that ... have been ruled constitutionally invalid in a prior case are not to be counted. With respect to the current sentencing proceeding, this guideline and commentary do not confer upon the defendant any right to attack collaterally a prior conviction or sentence beyond any such rights otherwise recognized in law (*e.g.,* 21 U.S.C. § 851 expressly provides that a defendant may collaterally attack certain prior convictions).[18]

U.S.S.G. § 4A1.2, Application Note 6, as effective Nov. 1, 1993. The language previously contained in the Background Note, quoted above at page ——, was deleted in its entirety.

The Commission explained these revisions as follows:

This amendment ... clarifies the Commission's intent with respect to whether § 4A1.2 confers on defendants a right to attack prior convictions collaterally at sentencing, an issue on which the appellate courts have differed. (Citations omitted). This amendment addresses this inter-circuit conflict in interpreting the commentary by stating more clearly that the Commission does not intend to enlarge a defendant's right to attack collaterally a prior conviction at the current sentencing proceeding beyond any right otherwise recognized in law.

U.S. Sentencing Commission Guidelines Manual, Appendix C, 1993 ed., ¶ 493 at 972 ["Appendix C"].

---

**17.** Note the two aspects of the concept of constitutionality which are presented here: First, a prior conviction may be "constitutionally invalid," that is, obtained in violation of the constitutional rights of the accused. Second, and an entirely distinct issue, is whether a defendant at sentencing may be "constitutionally entitled" to present a collateral attack on the constitutional validity of a prior conviction. Further, as to the latter type of issue, the Supreme Court in its *Custis* decision has demonstrated that a right to make such a collateral attack can be asserted on two possible grounds: constitutional entitlement and statutory authorization. Both of those grounds were addressed by the Court in *Custis.* *See Custis,* —— U.S. at ——–——, 114 S.Ct. at 1735–37. It is also noteworthy that the *Custis* decision does not directly affect the holding by the Court of Appeals for the Third Circuit in *Brown* because the issue in *Brown* was whether statutory authorization for collateral attack existed under the Guidelines; whereas *Custis* dealt with two other issues, namely, under what circumstances does constitutional entitlement to assert a collateral attack arise, and whether statutory authorization for collateral attack existed under the statute of the offense in that case, 18 U.S.C. § 924(e). However, the reasoning of the Supreme Court in *Custis* on the issue of statutory interpretation in a closely analogous setting can be instructive in later cases such as the one presently before this Court.

**18.** 21 U.S.C. § 851, which is referred to in this revised Application Note, is the same statute cited in the *Custis* decision as an example of a statute which does expressly permit collateral challenges. *Custis,* —— U.S. at ——, 114 S.Ct. at 1736. *See* discussion *supra.*

Defendant Lewis in the present case concedes that after the effective date of these revisions, the Guidelines do not confer a statutory right of collateral attack. He contends, however, that the Guidelines version in effect previously, as interpreted by the Court of Appeals for the Third Circuit in *Brown,* did provide such a right. Therefore, according to defendant, that earlier version of the Guidelines, which was in effect on the date of the instant offense, is the one which should be applied because it was more favorable. Further, defendant argues that he should not suffer the alleged *ex post facto* effect of having the later version applied. However, it is clear that the Ex Post Facto Clause of the Constitution does not apply to judicial constructions of statutes. *United States v. Burnom,* 27 F.3d 283, 284 (7th Cir.1994) (citing *Marks v. United States,* 430 U.S. 188, 191, 97 S.Ct. 990, 992, 51 L.Ed.2d 260 (1977) ("The Ex Post Facto Clause is a limitation upon the powers of the Legislature and does not of its own force apply to the Judicial Branch of government.")). Thus, insofar as defendant argues here that the interpretation of the Guidelines by the Court of Appeals for the Third Circuit in *Brown* provided him with a statutory right to challenge collaterally his prior convictions, which right he should be afforded in order to avoid a violation of the Ex Post Facto Clause, this argument fails.

However, regardless of whether or not defendant's argument is flawed from the outset because the Ex Post Facto Clause does not apply to judicial construction of a statute, given the recent Guidelines amendments and the reasoning of the Supreme Court in *Custis* on the analogous issue of statutory authorization presented in that case, this Court is not otherwise persuaded that defendant's arguments are meritorious.

The decision in *Custis* referred to only two possible bases upon which to seek collateral review in the context of criminal sentencing: constitutional entitlement or statutory authorization. *See* discussion of that distinction above at n. 17. Defendant here concedes that his proffered grounds for collateral attack do not meet the highly restrictive criteria for constitutional entitlement announced in *Custis,* since the convictions in question were at least based upon counselled guilty pleas. Defendant must therefore show that there exists statutory authorization for a court to consider his collateral attacks.

The two possible sources of statutory authorization are the offense statute, 18 U.S.C. § 2113(a) (bank robbery), or the Guidelines themselves. Defendant concedes that the offense statute contains no such authorization. The Sentencing Commission has now stated, in its latest revision, that the Guidelines are not intended to confer such authorization. The Commission did not promulgate its 1993 revisions on this point as a policy change, but rather, in its own words, as an amendment to "clarif[y] the Commission's intent with respect to *whether § 4A1.2 confers* [such] a right...." Appendix C, ¶ 493 at 972 (emphasis added). The Commission's answer to that question is in the negative.

The purpose of the amendment to the Application Notes, according to the Commission, was to "address[es] this inter-circuit conflict in interpreting the commentary by stating more clearly that the Commission does not intend to enlarge a defendant's right ... beyond any right otherwise recognized in law." *Id.* This action by the Commission is consistent with the view expressed by the Court of Appeals for the Third Circuit in *Brown* when it said simply that if the Commission did not intend the interpretation which Court of Appeals for the Third Circuit and the majority of the other appellate courts had developed, the Commission could "very easily clarify its intent when it next promulgate[d] Guidelines amendments." *Brown,* 991 F.2d at 1166. It seems to this Court that the Commission has made it clear with this explanation that it does not now intend, and did not intend in the immediately prior version of the Application Notes, to indicate that § 4A1.2 of the Guidelines should be interpreted as conferring any statutory authorization for collateral attack. Nor could it be successfully contended that until the Application Notes were thus amended, *Brown* established such statutory authorization, at least in the Third Circuit, by the interpretation of the Guidelines set forth by the Court of Appeals. The Supreme Court has clearly held that it is the Guidelines

themselves which constitute the statutory enactment. *Stinson v. United States,* —— U.S. ——, ——–——, 113 S.Ct. 1913, 1918–19, 123 L.Ed.2d 598 (1993). However, the Supreme Court has also held that since "the interpretations of the guidelines [by the Sentencing Commission] contained in the commentary represent the most accurate indications of how the Commission deems that the guidelines should be applied to be consistent with the Guidelines Manual as a whole as well as the authorizing statute," these interpretations are authoritative and are binding on the federal courts. *Id.* It therefore follows that in general, to the extent that an amendment to the Application Notes merely "clarifies" the meaning of a Guidelines provision, that meaning must prevail over prior court interpretations. *Cf. Stinson v. United States,* —— U.S. at ——–——, 113 S.Ct. at 1918–19; *see also United States v. Burnom,* 27 F.3d at 284.

The language of the prior version of the Application Notes, analyzed as the Supreme Court did in *Custis,* similarly leads to the conclusion that no statutory authorization for collateral review was conferred by the Guidelines under that version. It will be recalled that the pertinent language in effect immediately prior to Nov. 1, 1993 stated in Application Note 6 that "sentences resulting from convictions that a defendant shows to have been *previously ruled* constitutionally invalid are not to be counted." U.S.S.G. § 4A1.2, Application Note 6, eff. Nov. 1, 1992 (emphasis added).[19] The "clear negative implication" of such language is that the courts "*may* count a conviction that has *not* been set aside." *See Custis,* —— U.S. at ——, 114 S.Ct. at 1736 (emphasis in original). Similarly, the language of that version of the Application Note was devoid of any clearly stated intention that the Guidelines authorize such collateral attacks. Again, as the Court said in *Custis,* "when Congress intended to authorize collateral attacks on prior convictions . . ., it knew how to do so." *Id.* The Sentencing Commission, in exercising the legislative authority delegated to it by Congress, presumably had no less capability. Yet instead of expressly authorizing such collateral

attacks anywhere in that version of the Guidelines, the Commission provided a Background Note which at best was ambiguous, but which certainly did not indicate any clear intent to authorize such collateral attacks. *See Brown,* 991 F.2d at 1165–1166.

Finally, in *Custis,* as in this case, there are no specific procedures set forth in the statute in question (here, the Nov. 1, 1992 version of the Guidelines) allowing such challenges. Thus, following the reasoning of *Custis* and other courts which have addressed the issue, it appears reasonable for this Court to conclude that the "clarification" issued by the Commission in its Nov. 1, 1993 amendments to Application Note 6 was just that, and that the prior version of that Application Note did not confer statutory authorization to assert such challenges. *See United States v. Kopp,* 951 F.2d at 526 n. 8 (where the Commission describes an amendment as a clarification, and on its face the change is not necessarily substantive, such an amendment is editorial and its application does not raises *ex post facto* concerns); *United States v. Quinn,* 18 F.3d 1461, 1467 (9th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2755, 129 L.Ed.2d 871 (1994) (citing *United States v. Carrillo,* 991 F.2d 590, 591–92 (9th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 231, 126 L.Ed.2d 186 (1993)); *United States v. Robinson,* 935 F.2d 201, 204 (11th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 885, 116 L.Ed.2d 789 (1992).

In summary, and in conclusion, defendant Lewis in this matter contends that this Court possesses discretion to entertain his collateral attacks upon the constitutionality of two prior counselled convictions, based upon his argument that Application Note 6 and the Background Note to U.S.S.G. § 4A1.2, as in effect in August, 1993 on the date of the instant offense, conferred statutory authorization upon the courts to consider such challenges. Defendant concedes that in light of the recent Supreme Court decision in *Custis v. United States,* —— U.S. ——, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994), it is clear that he cannot claim to be constitutionally entitled to raise such challenges. This Court concludes that the interpretation of that Applica-

---

**19.** The highlighted language in this provision was added in the Nov. 1, 1990 revision to the

Guidelines. *See* Appendix C, ¶ 353, p. 748.

tion Note and Background Note by the Court of Appeals for the Third Circuit in *United States v. Brown*, 991 F.2d 1162 (1993), has been addressed by the Sentencing Commission in its "clarifying" amendments effective November 1, 1993. It is for that reason, and the other reasons stated herein, that this Court holds that, as of the sentencing date in this case (July 12, 1994), it did not possess the discretion to consider defendant's proffered collateral challenges to the two specified prior convictions; and that no *ex post facto* violation is presented in this matter by reason of the application of the Guidelines version in effect as of the date of sentencing.[20]

## CONCLUSION

For the foregoing reasons, the objection of defendant Vernon Lewis to application of § 4B1.1 of the United States Sentencing Guidelines in connection with the Judgment and Commitment Order entered on July 21, 1994 was overruled, and defendant was determined to qualify as a career offender pursuant to those provisions for purposes of sentencing in this case.

---

**20.** It may be noted with due respect that a learned member of this Court has reached the opposite conclusion on similar facts in *United States v. Anthony Peterson*, Cr. No. 93–0010 (WGB), (D.N.J. filed Feb. 4, 1994).