**UNITED STATES of America, Plaintiff–Appellant, Cross–Appellee,**

v.

**George Nye OSBURN, Robert Allott Osburn, Defendants–Appellees, Cross–Appellants.**

**No. 91–8091.**

United States Court of Appeals, Eleventh Circuit.

March 23, 1992.

---

Michael Abbott, Atlanta, Ga., for George Osburn.

Joseph A. Homans, Gainesville, Ga., for R.A. Osburn.

Carolyn L. Adams, Joe D. Whitley, Asst. U.S. Attys., Atlanta, Ga., for U.S.

Before KRAVITCH, ANDERSON and BIRCH, Circuit Judges.

KRAVITCH, Circuit Judge:

The government appeals the district court's finding that the sentencing scheme embodied in 21 U.S.C. § 841 is unconstitutional. Section 841 outlines a sentencing structure that punishes individuals convicted of possessing marijuana plants in proportion to the number of plants seized, regardless of the actual weight of marijuana obtainable from those plants. The statute attaches an "equivalency" to each plant seized: individuals convicted of possessing fewer than 50 plants are convicted on a 100 gram per plant basis, individuals convicted of possessing 50 or more plants are convicted on a 1000 gram per plant basis. Defendants claim that this scheme is unconstitutional because it violates their due process rights in three ways: a) by treating offenders differently depending upon the number of plants seized, b) by treating growers differently from other marijuana offenders, and c) by treating those arrested prior to harvest more harshly than those convicted after harvest. We hold that section 841 is constitutional and therefore remand for sentencing consistent with the statute and

the corresponding Federal Sentencing Guidelines.

## I. STATEMENT OF THE FACTS AND COURSE OF PROCEEDINGS

The defendants, George Nye Osburn and Robert Allott Osburn, were arrested after having been observed tending a marijuana field in a federal recreational area. They were charged with two counts of drug offenses: conspiracy to manufacture in excess of 100 marijuana plants in violation of 21 U.S.C. § 846, and manufacture in excess of 100 marijuana plants in violation of 21 U.S.C. § 841. Each waived his right to a jury trial. George Osburn received a thirty-three month sentence and a $6,000 fine. Robert Osburn, his son, received an eighteen month sentence and a $4,000 fine.

Prior to their convictions, defendants filed a motion with the district court challenging the constitutionality of 21 U.S.C. § 841. After finding the defendants guilty of the two underlying drug counts, the district court held an evidentiary hearing to determine whether the sentencing provisions embodied in section 841 violated the due process rights of defendants.

During this hearing, defendants proffered Dr. Mahmoud A. ElSohly as an expert in the chemistry and botany of cannabis and the production of marijuana for research purposes.[1] Dr. ElSohly testified that he has a Drug Enforcement Administration license and has been growing marijuana under government supervision for fifteen years. At the time of the hearing, Dr. ElSohly's program was the only one in the United States in which marijuana was grown on a significant scale under a research grant from the government. Dr. ElSohly has a three-year contract with the National Institute of Drug Abuse to produce standardized marijuana for research.

Dr. ElSohly described the three types of marijuana plants. Each variety is characterized by the length of its growth cycle:

---

1. Dr. Mahmoud A. ElSohly is a Research Professor at the Research Institute of Pharmaceutical Sciences at the University of Mississippi School of Pharmacy. He has a Ph.D. in pharmacy and pharmacognosy. He has published over a hundred articles in the areas of natural products research and drugs of abuse and has previously testified as an expert witness in federal and state courts.

eight weeks, twelve to sixteen weeks, and twenty to twenty-four weeks. The average weight of dried marijuana leaves obtainable from the quickest maturing plants ranges from one to two ounces. The medium maturing variant yields between two and twelve ounces of marijuana, and the plant with the longest period of maturity averages between four ounces and two pounds.[2] The biggest plant Dr. ElSohly ever grew yielded marijuana weighing approximately two pounds and was grown in an extremely congenial environment. Most of the plants grown under similarly optimum conditions produced only one pound of marijuana. Dr. ElSohly testified that he had never seen a plant weighing as much as a kilogram (2.2 pounds).[3]

Most marijuana growers choose to cultivate the medium maturity variety because the short variety contains too little THC and the long variety takes too long to mature. Dr. ElSohly testified that a rough estimate of the weight of usable dry leaves derived from an average plant would be approximately 120 grams, or four ounces. In a two-year study conducted by Dr. ElSohly, he found that fully mature plants of the longest maturing variety yielded an average of 274 grams of marijuana.

Dr. ElSohly examined pictures of the marijuana seized in this case and testified that these plants were of the medium variety and were close to maturity. One of these plants was examined by the Georgia Bureau of Investigation and had been assigned a "wet" weight of five ounces.[4]

Based upon Dr. ElSohly's testimony and the briefs of the defendants, the district court found the sentencing scheme of section 841 and the corresponding sentencing guidelines unconstitutional. *United States v. Osburn*, 756 F.Supp. 571 (N.D.Ga.1991). The trial court held that:

> there is no rational basis to support the Commission's 1000 grams per plant ratio for plants in groups of 50 or more. The record clearly demonstrates that a 1000 gram equivalency cannot be empirically supported.... [T]he court finds that the Guidelines' Drug Quantity Table is unconstitutional to the extent that it treats one plant as equivalent to 1000 grams.

*Id.* at 576. Using Dr. ElSohly's testimony that the seized plants were of the medium variety, the judge applied a 300 gram per plant equivalency and sentenced the defendants accordingly.[5]

The government appeals, claiming that the sentencing scheme of section 841 is constitutional. The defendants cross-appeal, challenging the district court's 300 gram equivalency. They argue that the court should have applied a lower average yield in calculating their sentences.

## II. STANDARD OF REVIEW

■ The district court's finding concerning the constitutionality of section 841 is a question of law and is therefore subject to *de novo* review. *United States v. Garcia*, 890 F.2d 355 (11th Cir.1989). 18 U.S.C. § 3742(e) mandates the standard of review for findings of facts underlying sentences imposed according to the Federal Sentenc-

---

**2.** The term "marijuana" technically does not refer to the plant but instead to the drug that is derived from the plant cannabis sativa. Marijuana is defined as the dried leaves and flowery tops of the cannabis sativa. 21 U.S.C. § 802(16) specifically excludes the plants' stalks and stems from the definition of marijuana. "Wet marijuana" refers to the plant form prior to the removal of stalks and stems. Dr. ElSohly testified that less than 18% of the weight of a "wet" plant becomes usable marijuana.

**3.** Dr. ElSohly testified that cannabis sativa is an annual plant that dies upon maturity. If the leaves are not harvested, they are lost when the plant dries up and dies. Dr. ElSohly also testified that the yield of the plant can be increased

through harvesting prior to maturity; however, overharvesting can kill the plant. If the proper number of leaves are picked, then the grower can obtain marijuana from these leaves as well as from those that replace the original leaves. However, the early leaves do not contain as much THC, the active ingredient in marijuana, as do the more mature leaves.

**4.** *See supra* note 2 for a discussion of the difference between "dry" and "wet" marijuana.

**5.** The estimate of 300 grams per plant was obtained by rounding down from 12 ounces (340 grams) which Dr. ElSohly had stated was the high end of the weight of marijuana obtainable from plants of the medium maturing variety.

ing Guidelines. Under this statute, a reviewing court must accept the district court's factual finding that the sentence should be based upon a 300 gram per plant equivalency unless this finding is "clearly erroneous." *Id.* Similarly, this court must give "due deference" to the district court's application of the guidelines to the facts. *Id.*

## III. THE STATUTE AND THE FEDERAL SENTENCING GUIDELINES

Defendants were convicted and sentenced pursuant to 21 U.S.C. § 841.[6] In that statute, Congress outlined a sentencing scheme in which an individual's sentence would increase in proportion to the number of plants seized or in proportion to the actual weight of dried marijuana involved in the conviction. In offenses involving the seizure of 50 or more marijuana plants, Congress provided a plant/weight equivalency scheme in which one plant would be equated with 1000 grams of marijuana. In instances involving fewer than 50 plants, the actual weight of marijuana attributable to the seized plant would be used when calculating the defendant's sentence.

In section 841(b), Congress established sentencing ranges based on the actual quantity of dry marijuana seized or the "equivalent" number of plants. If the conviction involves 1000 kilograms or more of marijuana, or 1000 or more marijuana plants, the defendant will receive a sentence of no less than ten years and no greater than life imprisonment. An offense involving 100 or more kilograms of

marijuana or 100 or more plants requires a minimum sentence of five years and a maximum of forty years imprisonment. A defendant convicted of an offense involving 50 or more kilograms of marijuana or 50 or more plants will be subject to a maximum sentence of twenty years. An offense involving fewer than 50 kilograms of marijuana or fewer than 50 plants warrants a sentence of not more than five years.

The Federal Sentencing Guidelines echo the Congressional equivalency scheme contained in section 841(b):

> In the case of an offense involving marihuana plants, if the offense involved (A) 50 or more marihuana plants, treat each plant as equivalent to 1 KG of marihuana; (B) fewer than 50 marihuana plants, treat each plant as equivalent to 100 G of marihuana. Provided, however, that if the actual weight of the marihuana is greater, use the actual weight of the marihuana. U.S.S.G. § 2D1.1, p. 82 (Nov. 1991).

Although the statute indicates that sentencing for offenders convicted of possessing fewer than 50 plants is to be based on the *actual* weight, the Guidelines apply a 100 gram per se equivalency unless actual weight is higher. The Commission justifies this ratio by "the fact that the average yield from a mature marihuana plant equals 100 grams of marihuana." U.S.S.G. § 2D1.1, p. 89 (Nov. 1991) (commentary following Guideline).

## IV. SEPARATION OF POWERS

■ Federal legislation mandating length of sentences does not violate the

---

**6.** Section 841(b) provides:

(1)(A) In the case of a violation of subsection (a) of this section involving—
(vii) 1000 kilograms or more of a mixture or substance containing a detectable amount of marihuana, or 1,000 or more marihuana plants regardless of weight;
such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life....
(B) In the case of a violation of subsection (a) of this section involving—
(vii) 100 kilograms or more of a mixture or substance containing a detectable amount

of marihuana, or 100 or more marihuana plants regardless of weight ...
such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years ...
(C) In the case of a controlled substance in schedule I or II except as provided in subparagraphs (A), (B) and (D), such person shall be sentenced to a term of imprisonment of not more than 20 years ...
(D) In the case of less than 50 kilograms of marihuana, except in the case of 50 or more marihuana plants regardless of weight such person shall be sentenced to a term of imprisonment ... of not more than 5 years...

separation of powers doctrine. In *Mistretta v. United States*, the Supreme Court upheld the federal sentencing statutory scheme because "Congress, of course, has the power to fix the sentence for a federal crime ... and the scope of judicial discretion with respect to a sentence is subject to congressional control." *Mistretta v. United States*, 488 U.S. 361, 364, 109 S.Ct. 647, 650, 102 L.Ed.2d 714 (1989) (citing *Ex Parte United States*, 242 U.S. 27, 42, 37 S.Ct. 72, 74, 61 L.Ed. 129) (citations omitted). Because "there is no right to individualized sentencing ... Congress may constitutionally prescribe mandatory sentences or otherwise constrain the exercise of judicial discretion ... so long as such constraints have a rational basis." *United States v. Huerta*, 878 F.2d 89, 94 (2d Cir. 1989), *cert. denied*, 493 U.S. 1046, 110 S.Ct. 845, 107 L.Ed.2d 839 (1990) (citations omitted); *Geraghty v. United States Parole Com'n*, 719 F.2d 1199 (3d Cir.1983), *cert. denied*, 465 U.S. 1103, 104 S.Ct. 1601, 80 L.Ed.2d 132 (1984) (sentencing not inherently or exclusively a judicial function).

## V. SUBSTANTIVE DUE PROCESS

### A. Review of Statutes

■ Defendants claim that their due process rights have been violated by a statute that creates arbitrary classifications of offenders. Because defendants do not allege discrimination against a suspect class, the statute will be sustained unless Congress had no reasonable basis for creating the questioned classifications. *United States v. Holmes*, 838 F.2d 1175, 1177 (11th Cir.), *cert. denied*, 486 U.S. 1058, 108 S.Ct. 2829, 100 L.Ed.2d 930 (1988) ("[A] statute [that] does not discriminate on racial grounds or against a suspect class ... will be sustained in the absence of persuasive evidence that Congress had *no reasonable basis* for drawing the lines it did"). *United States v. Holmes*, 838 F.2d 1175, 1177 (11th Cir.1988) (emphasis added); *United States v. Sorondo*, 845 F.2d 945 (11th Cir. 1988). Further, a statute will be upheld even if it is not the best means of dealing with a problem:

Our responsibility is not to determine whether this was the correct judgment or whether it best accomplishes congressional objectives; rather, our responsibility is only to determine whether Congress' judgment was rational.

*United States v. Holmes*, 838 F.2d at 1178; *see also United States v. Buckner*, 894 F.2d 975, 978 (8th Cir.1990).

■ The burden of reasonableness is not a particularly onerous burden for Congress to bear. When a legislative judgment is questioned, the court's role "must be restricted to the issue of whether *any state of facts either known or which could reasonably be assumed* affords support for it." *United States v. Carolene Products Co.*, 304 U.S. 144, 154, 58 S.Ct. 778, 784, 82 L.Ed. 1234 (1937) (emphasis added). In other words, any rationale Congress "could" have had for enacting the statute can validate the legislation, regardless of whether Congress actually considered that rationale at the time the bill was passed.

### B. Review of Guidelines

■ Courts are less deferential to the Federal Sentencing Commission when reviewing attacks on the Federal Sentencing Guidelines. Generally, "[w]e review the rules with deference, and we may not substitute our judgment on policy matters for that of the Commission. But a Guideline that is arbitrary and capricious cannot be given effect in court." *United States v. Streeter*, 907 F.2d 781, 790 (8th Cir.1990).

In *Streeter* the Eighth Circuit invalidated part of section 2D1.1 of the Guidelines because it failed to follow the mandate of the underlying statute. *Id.* As discussed above, the Guidelines imposed a *per se* 100 gram per plant equivalency in place of the actual weight requirement despite section 841(b)(1)(D)'s mandate that sentences for offenses involving fewer than 50 plants be based on the *actual* weight of marijuana obtained from those plants. The *Streeter* court indicated that a 100 gram equivalency might have been permissible if the government had claimed that 100 grams represented the average yield of marijuana plants. *Id.* at 790. However, the govern-

ment had failed to present this argument, and the court consequently found the Guideline arbitrary and capricious. *Id.*

Since *Streeter* was decided, the commentary accompanying the guidelines has been amended. Now the commentary states that "[t]he decision to treat each plant as equal to 100 grams is premised on the fact that the average yield from a mature marihuana plant equals 100 grams of marihuana." U.S.S.G. § 2D1.1, p. 89 (Nov. 1991). Given this justification and the dictum contained in *Streeter*, the Guidelines would likely survive a direct challenge concerning the validity of applying a 100 gram per plant equivalency to offenses involving fewer than 50 plants.

▇▇▇▇ The case at hand, however, involves more than 50 plants, and we therefore need not settle the issue of the propriety of the 100 gram per plant Guideline. For the purposes of this case, the Guidelines are consistent with congressional intent as expressed in 21 U.S.C. § 841(b) and can only be deemed arbitrary and capricious if the statute upon which they are based is arbitrary. We therefore agree with the Ninth Circuit and the district court that section 2D1.1 of the Guidelines is consistent with the Congressional mandate contained in section 841(b)(1)(D) concerning the treatment of individuals convicted of offenses involving 50 or more marijuana plants. *United States v. Motz,* 936 F.2d 1021 (9th Cir.1991) (case similarly challenging the constitutionality of Congress's equivalency scheme on the same grounds as the defendants in this case); *United States v. Osburn,* 756 F.Supp. 571, 574 (N.D.Ga.1991). The Guidelines appropriately implement Congress's intent that sentences for individuals convicted of possessing 50 or more plants be based on a 1000 gram per plant equivalency scheme.

## VI. DEFENDANTS' DUE PROCESS ARGUMENTS

The ultimate decision concerning the constitutionality of section 841 requires a two part inquiry: first, whether it was reasonable for Congress to move to a sentencing scheme based on number of plants rather than on their weight, and second, whether particular lines drawn in the statute are reasonable.

In undertaking this analysis, we must apply the "reasonable basis" test discussed above. The sentencing scheme will be sustained unless this court can find no reasonable basis for Congress drawing the lines the way it did. *See Holmes,* 838 F.2d at 1177; *Carolene Products,* 304 U.S. at 154, 58 S.Ct. at 784.

In *United States v. Bradley,* 905 F.2d 359, 360 (11th Cir.1990), this court upheld Congress's decision to base sentencing determinations on the number of plants seized rather than the actual weight of marijuana derived from those plants.[7] The court reasoned that the final weight of the plant is unknown at the time of seizure because plants often have not grown to maturity when the arrest occurs. If sentencing were based upon actual weight, then the "Guidelines would reward a defendant for being arrested early in the growing cycle before his plants have matured." *Id.* at 361. The court upheld the sentencing scheme because it had found a reasonable basis for Congress's decision to punish marijuana growers according to the number of plants rather than the weight of their harvest.

Neither party contests the holding of *Bradley.* However, defendants, on three separate grounds, do contest the 1000 gram equivalency contained in the Guidelines and the statute. First, they claim that there is no rational basis for a sentencing scheme that punishes those convicted of offenses involving 50 or more plants more harshly than those convicted of offenses involving fewer than 50 plants. Second, they contend that there is no rational basis for imposing harsher penalties on those convicted of an offense involving marijuana plants as opposed to those convicted of offenses involving marijuana in a different form. Third, they challenge the

7. Under the former sentencing scheme, each seized plant was equated with 100 grams of dry marijuana regardless of the number of plants possessed by the offender.

classification scheme because they find no rational basis for distinguishing between growers who are arrested before the plants are harvested, and hence subject to the equivalency scheme, and those who are arrested after harvest, who are sentenced according to the weight of the seized marijuana. Underlying each of defendants' claims is the argument that while one specially cultivated plant might yield 1000 grams of marijuana, no group of plants could ever yield this high an average.

## A. Treatment of Growers of Fewer than 50 Plants

 Defendants, who have been convicted of growing more than 100 plants, claim that the sentencing classification of section 841 violates their due process rights by arbitrarily treating them more harshly than growers of fewer than 50 plants. There is a reasonable basis, however, for Congress's decision to penalize large scale growers more harshly than small-time offenders.

As the Ninth Circuit has recognized, the equivalency scheme reflects Congress's beliefs concerning the seriousness of the crime, not the actual or potential weight of the plant. *See United States v. Motz*, 936 F.2d at 1025. In *Motz*, the Ninth Circuit held that it is rational to penalize large-scale marijuana growers more harshly than other growers. The defendants in that case challenged the "1 plant = 100 gm." equivalency claiming that there was no evidence that the ratio accurately reflected the actual weight of the seized plants,[8] 926 F.2d at 1025, but the court noted that:

There is no constitutional requirement that the penalty for an offense involving one marijuana plant be equal to the penalty for an offense involving the quantity of dried marijuana the plant would yield.

*Id.* The equivalency scheme reflected Congress's belief that a grower of 101 plants has committed an offense as serious as a distributor of 101 kilograms of dried marijuana. In other words:

The table does not state that the yield of a plant is 100 grams, but rather that the *offense level* for a crime involving one marijuana plant is the level that would apply in a case involving 100 grams of dried marijuana.

*Id.* (emphasis added). Applying the reasoning in *Motz*, we find that Congress could have rationally chosen the current penalty scheme to halt the problem earlier in the cycle, making it less likely that the drug would ever be distributed to the public.[9]

In fact, the statute embraces the market-oriented approach to the problem of rampant marijuana proliferation. This approach mandates intense focus in the first instance on major traffickers who are responsible for creating and delivering very large quantities of drugs, and in the second instance on managers at the retail levels. *See United States v. Buckner*, 894 F.2d 975, 979 n. 10 (8th Cir.1990); H.R.Rep. No. 845, 99th Cong., 2d Sess. 11–12 (1986).

In addition, courts continually have upheld statutes that treat certain drug offenders more harshly than others. In *Holmes*, this court held that it was rational to punish an individual possessing an amount of pure cocaine laced with legal substances more harshly than an equal amount of pure, unlaced cocaine. 838 F.2d at 1178. Congress had reasonably chosen to punish retailers harshly because they made the drug more readily accessible to users. In *United States v. Bishop*, 894 F.2d 981 (8th Cir.1990), the Eighth Circuit similarly upheld the district court's inclusion of LSD blotter paper in determining the weight of LSD "possessed" by defen-

8. The district court erroneously applied the 1989 guidelines, but as neither party raised the issue, the appellate court did not reach it. *United States v. Motz*, 926 F.2d at 1025 n. 1. Under the correct guidelines the defendants would have been sentenced under the same "1 plant = 1000 gram" standard as the defendants in this case.

9. What Congress "could have" intended, whether or not this rationale was actually used to justify the legislation, is sufficient to uphold a statute as long as the explanation forms a reasonable basis for drawing the lines that it did. *See United States v. Carolene Products Co.*, 304 U.S. at 154, 58 S.Ct. at 784; *United States v. Holmes*, 838 F.2d at 1176, 1177.

dant. The court believed that "[t]he blotter paper serves the purpose of making the LSD ready for retail sale and ingestion by the user" and that Congress consequently intended the weight of the carrier to be included in order to punish more severely those who made the LSD more available to users. *Id.* at 985.

Another analogy can be found in the Eighth Circuit's decision in *Buckner.* In that case, defendants challenged a statute that required the possession of one gram of crack cocaine to be treated the same as the possession of 100 grams of powder cocaine. *Buckner,* 894 F.2d 975. The court upheld the sentencing scheme because "[m]embers of Congress considered cocaine base to be more dangerous to society than cocaine because of crack's potency, its highly addictive nature, its affordability, and its increasing prevalence." *Id.* at 978. Hence, the equivalency system was meant, there as well as here, to reflect the seriousness of the offense (one gram of crack was as bad as 100 grams of powder), not the actual weight of the drug or even the number of uses possible from a specific amount.

The guidelines and the statute clearly indicate that Congress was attempting to measure the severity of the offense, not the actual weight of marijuana grown. That explains why the equivalency changes from 100 grams to 1000 grams at the 50 plant mark. This sentencing elevation is obviously not a recognition that individual plants grown in groups of 50 or more have any greater weight than individual plants grown in groups of less than 50. Instead, it is a reflection of Congress's belief that growing a large number of plants (capable of large scale distribution) is an exponentially more severe offense than growing a small number.

Both the government and the district court rely on *United States v. Streeter,* 907 F.2d 781 (8th Cir.1990), for the proposition that weight, not number, of plants is the appropriate measure for sentencing purposes. However, the *Streeter* case does not speak to the issue before this court. *Streeter* holds that "[t]he statute clearly indicates that in cases involving less than fifty plants, defendants are to be sentenced on the basis of the weight of the marijuana involved." *Id.* at 790. It was therefore incorrect for the Guidelines to apply a 100–gram-per-plant equivalency for offenses involving fewer than 50 plants, especially when there was no justification that the yield of marijuana plants averages 100 grams per plant.[10]

The *Streeter* court spoke only to the issue of an offense involving fewer than 50 plants. In fact, by constantly stressing Congress's intent concerning this small number of plants, that court implicitly recognized that a different system would be used for offenses involving more than 50 plants.

■ There is no case law supporting the district court's finding on this issue. In addition, the district court failed to apply the correct standard when it found that:

> there is no rational basis to support the commission's 1000 gram per plant ratio for plants in groups of 50 or more. The record clearly demonstrates that a 1000 gram equivalency cannot be empirically supported.

*United States v. Osburn,* 756 F.Supp. 571, 576 (N.D.Ga.1991). But, as *Motz* and *Buckner* recognized, the equivalency ratios are rational because they measure the seriousness of the offense, not the actual weight of the drug and are therefore rational equivalencies. Rather than looking for *any* reasonable basis to justify the statute, as required by *Holmes* and *Carolene Products,* the district court improperly narrowed its inquiry to the issue of whether one plant could actually yield 1000 grams of marijuana. There is *a* rational basis for the Congressional sentencing scheme, and we are therefore compelled to uphold the

---

**10.** Since *U.S. v. Streeter* was decided, the government has adopted a justification for its 100–gram–per–plant equivalency in cases involving fewer than 50 plants: "The decision to treat each plant as equal to 100 grams is premised on the fact that the average yield from a mature marihuana plant equals 100 grams of marihuana." U.S.S.G. § 2D1.1, p. 89 (Nov. 1991) (commentary following Guideline).

1000–gram-per-plant equivalency for offenses involving 50 or more plants.

### B. Growers vs. Distributors

 In their second argument, defendants claim that section 841 violates their due process rights because there is no rational basis for treating plant growers more harshly than those convicted of other marijuana crimes. However, the market-oriented approach, discussed above, offers a rational explanation for section 841(b). H.R.Rep. No. 845, 99th Cong., 2d Sess. 11–12 (1986). Indeed, that approach *mandates* different treatment for individuals involved in different aspects of the distribution of a drug. By adopting the market-oriented approach's emphasis on the elimination of major traffickers and those involved in the earlier stages of drug distribution, Congress sought to stop the drug problem early in the distribution cycle. If the government concentrates on eliminating the problem early in the distribution cycle, then it will be less necessary to control drug possession later when the numbers of retailers and users has multiplied. In addition, if the problem is addressed at an early stage, then it is less likely that the drug will ever reach users, and the consequent problems of drug use would be commensurately diminished.

### C. Arrest Before Harvesting vs. Arrest After Harvesting

In defendants' final challenge, they argue that section 841(b) not only favors distributors over growers, but favors growers who have just completed their harvest over growers who have not yet harvested their marijuana plants. Defendants claim that this distinction is arbitrary and capricious and therefore violates their due process rights.

 Defendants correctly identify an anomaly in the statutory scheme. Under section 841(b), a grower who is arrested immediately after she has harvested her marijuana crop will be sentenced according to the weight of the marijuana yielded by that crop. From the testimony before the district court, we are aware that the average yield on the crop could not even approach the 1000–gram-per-plant level. Yet, a similarly situated grower, arrested immediately prior to harvesting his crop, will be sentenced on a 1000–gram-per-plant basis. In this example, two people, almost identically situated, will be treated in an appreciably different manner. From the viewpoint of Congress, there seems to be no way to differentiate between the conduct of the two offenders.

 An inconsistency does not automatically invalidate a statute. The Supreme Court has recognized that such inconsistencies will exist and has granted Congress a certain amount of leeway:

> a legislature traditionally has been allowed to take reform 'one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind' ... and a legislature need not run the risk of losing an entire remedial scheme simply because it failed, through inadvertence or otherwise, to cover every evil that might conceivably have been attacked.

*McDonald v. Board of Election Com'rs of Chicago*, 394 U.S. 802, 809, 89 S.Ct. 1404, 1408–09, 22 L.Ed.2d 739 (1969) (citing *Williamson v. Lee Optical of Oklahoma*, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955)). Even if "loopholes" exist in the statutory scheme, the court need not deem the statute "irrational simply because it is an imperfect solution to the problems Congress intended to eradicate." *Azizi v. Thornburgh*, 908 F.2d 1130, 1135 (2d Cir. 1990).

In addition, defendants have not shown that any inequity has resulted from this potential loophole. They have not cited instances of identically situated individuals who received much lighter sentences solely because they were arrested following harvest and were consequently sentenced on the basis of weight and not on the basis of plants grown. We agree with the Eighth Circuit that "our job is not to speculate about extraordinary circumstances in which a legislative scheme breaks down; we live in a real world, and so apply the law to real world facts ... *We will deal*

*with absurd situations when they are before us."* United States v. Bishop, 894 F.2d 981, 986 (8th Cir.1990) (emphasis added).

## VII. CONCLUSION

For the foregoing reasons, we vacate the district court's order holding section 841(b) and Guideline 2D1.1 unconstitutional as they pertain to marijuana growers. The case is remanded to the district court for sentencing in accordance with the statute and the Federal Sentencing Guidelines.[11]

---

**11.** After the district judge found the Guidelines unconstitutional, he sentenced the defendants without regard to the 1000–gram–per–plant equivalency scheme. He estimated that the actual weight of the entire seized crop would average 300 grams per plant and sentenced the defendants accordingly. Defendants cross-appealed, arguing that, given Dr. ElSohly's testimony, the judge erred in choosing a 300 gram equivalency.

Defendants' claim is moot. The actual weight of the plants is irrelevant because we have upheld the constitutionality of the statute and the Guidelines, and the sentence on remand will reflect the 1000 gram per plant equivalency mandated by the statute.