United States Court of Appeals,

Eleventh Circuit.

No. 93-9270.

UNITED STATES of America, Plaintiff-Appellee,

v.

Maurie Wade SHIELDS, a/k/a Chip, Defendant-Appellant.

June 19, 1996.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:93-CR-248-01-RCF), Richard C. Freeman, Judge.

Before TJOFLAT, Chief Judge, and KRAVITCH, HATCHETT, ANDERSON, EDMONDSON, COX, BIRCH, DUBINA, BLACK, CARNES and BARKETT, Circuit Judges.

COX, Circuit Judge:

The primary issue in this appeal is whether, under 21 U.S.C. § 841 and U.S.S.G. § 2D1.1, a marijuana grower who is apprehended after his marijuana crop has been harvested should be sentenced according to the number of plants involved in the offense or according to the weight of the marijuana. A panel of this court held that, under our precedents, a grower who is apprehended after harvest may not be sentenced according to the number of plants involved. *United States v. Shields,* 49 F.3d 707, 712-13 (11th Cir.1995). We vacated the panel opinion and granted rehearing en banc. *United States v. Shields,* 65 F.3d 900 (11th Cir.1995). We hold that a defendant who has grown and harvested marijuana plants should be sentenced according to the number of plants involved, and affirm the district court.

I. Background

Maurie Shields and Joseph O'Reilly rented a house in Marietta,

Georgia, where they grew marijuana in the basement. When law enforcement officers searched the house, they discovered 27 live marijuana plants in a hydroponic garden. During the search, the officers also discovered a trash can which contained the remains of marijuana plants that Shields previously had harvested. The officers identified the dead plant matter as the remains of 26 separate marijuana plants. The search of the residence, including the officers' count of the harvested marijuana plants, was videotaped.

Shields was convicted on his plea of guilty to one count of conspiracy to manufacture marijuana, in violation of 21 U.S.C. § 846 (1994). In the presentence investigation report ("PSI"), a probation officer described Shields's offense conduct as involving 53 marijuana plants, and concluded that the appropriate guidelines sentencing range was 33 to 41 months imprisonment. This recommended sentence was calculated using the "equivalency provision" of U.S.S.G. § 2D1.1 n. *, which at that time required significantly greater sentences for offenses involving 50 or more marijuana plants than for offenses involving less than 50 plants. Shields objected to the PSI on the ground that his offense involved only 34 plants.

Shields was sentenced in October 1993. At the sentencing hearing, Shields again objected to the calculation of his offense level, arguing that his offense conduct only involved 33 to 35 marijuana plants. The court heard testimony from Shields that the root systems found in his basement were the remains of six to eight marijuana plants with multiple stems that he had broken apart when

he harvested them. The government offered the testimony of two law enforcement officers who had participated in the search of Shields's residence. The officers testified that the dead plant matter found in Shields's basement was the remains of 26 marijuana plants, each of which consisted of a complete root system attached to the stem of a plant. The officers testified that if the root systems and stems had been the remains of fewer than 26 plants, they would have seen tears down the side of the plant stems, which were not present. During the hearing, the district court judge viewed the portion of the videotape of the search of Shields's home in which the officers counted the root systems.

The district court credited the testimony of the law enforcement officers over Shields's testimony, finding that the root systems were the remains of 26 marijuana plants, and that Shields was responsible for a total of 53 marijuana plants. The court concluded that Shields's guidelines range was 33 to 41 months imprisonment, and sentenced him to 33 months imprisonment. Shields appeals his sentence.

## II. Discussion

Shields's primary argument on this appeal is that the district court misapplied 21 U.S.C. § 841 and U.S.S.G. § 2D1.1 when it calculated his sentence using the number of the harvested plants rather than the weight of the marijuana derived from those plants.[1]

---

[1]Shields repeats the argument he made at the sentencing hearing that the dead plant matter represents six to eight plants rather than 26 plants. We find this argument meritless. The district court's finding that the dead plant matter was the remains of 26 plants is supported by the testimony of the law enforcement officers and thus is not clearly erroneous. *See United States v. Robinson,* 935 F.2d 201, 205 (11th Cir.1991),

Shields failed to object to his sentence on this ground at his sentencing hearing. But the district court failed to elicit objections from the parties at the conclusion of the sentencing hearing, as required by *United States v. Jones,* 899 F.2d 1097, 1102-03 (11th Cir.), *cert. denied,* 498 U.S. 906, 111 S.Ct. 275, 112 L.Ed.2d 230 (1990), *overruled on other grounds, United States v. Morrill,* 984 F.2d 1136 (1993) (en banc), and the panel concluded that this was a proper case for the exercise of the court's discretion to address on the merits an argument raised for the first time on appeal. *Shields,* 49 F.3d at 709. Both parties ask us to address the merits of this issue. We elect to do so, and therefore need not decide whether the panel correctly concluded that the court must either address this issue on its merits or vacate the sentence and remand for resentencing. *Id.* at 709 & n. 5.

The base offense level for certain drug offenses is calculated using the Drug Quantity Table at § 2D1.1 of the sentencing guidelines. *See* United States Sentencing Commission, *Guidelines Manual,* § 2D1.1(c) (Nov. 1992). In the version of the guidelines which applied at the time of Shields's sentencing,[2] the Drug Quantity Table assigns offense levels for marijuana offenses according to the weight of marijuana measured in grams or kilograms. For offenses involving marijuana plants, the number of

---

*cert. denied,* 502 U.S. 1037, 112 S.Ct. 885, 116 L.Ed.2d 789 (1992) (holding that a district court's factual findings regarding drug quantity are reviewed for clear error).

[2]As a general rule, we apply the guidelines in effect at the time of a defendant's sentencing hearing. *United States v. Wilson,* 993 F.2d 214, 216 (11th Cir.1993).

plants is converted to weight using an "equivalency provision," which reads:

> In the case of an offense involving marihuana plants, if the offense involved (A) 50 or more marihuana plants, treat each plant as equivalent to 1 KG of marihuana; (B) fewer than 50 marihuana plants, treat each plant as equivalent to 100 G of marihuana. *Provided,* however, that if the actual weight of the marihuana is greater, use the actual weight of the marihuana.

U.S.S.G. § 2D1.1(c) n. *. [3] The equivalency ratio for offenses involving more than 50 plants (one plant equals one kilogram marijuana) was derived from the statute that sets mandatory minimum penalties for offenses involving marijuana and marijuana plants. U.S.S.G. § 2D1.1 comment. (backg'd); *see* 21 U.S.C. § 841(b)(1)(A), (B), (D) (1994) (setting, for example, a ten-year mandatory minimum for offenses involving at least 1000 kilograms of marijuana or 1000 marijuana plants). The equivalency ratio for offenses involving less than 50 plants (one plant equals 100 grams marijuana) was intended to approximate the average actual yield of a marijuana plant. U.S.S.G. § 2D1.1 comment. (backg'd). We have held that there is a reasonable basis for penalizing offenses involving 50 or more plants more harshly than offenses involving less than 50

---

[3]Section 2D1.1 has been amended, and the current version establishes a uniform 100-gram-per-plant equivalency ratio. U.S.S.G.App.C. (amend. 516) (effective Nov. 1, 1995). The Sentencing Commission has listed this amendment as one subject to retroactive application. U.S.S.G. § 1B1.10 (Nov. 1995). Under 18 U.S.C. § 3582(c)(2) (1994), Shields may petition the district court to modify his sentence. Shields has not filed such a petition or raised the issue of the retroactivity of the amendment on appeal, so a remand on this issue would be inappropriate. *Cf. United States v. Vasquez,* 53 F.3d 1216, 1227-28 (11th Cir.1995) (remanding to the district court the issue of whether a defendant was entitled to a modification of his sentence where the defendant raised the issue of retroactivity for the first time on appeal).

plants. *United States v. Osburn,* 955 F.2d 1500, 1507-09 (11th Cir.), *cert. denied,* 506 U.S. 878, 113 S.Ct. 223, 121 L.Ed.2d 160 (1992).

Shields argues that the district court erred in applying the equivalency provision of § 2D1.1 to his case because the dead plants found in his basement were not "marijuana plants" within the meaning of the guideline. As authority for the proposition that the term "marijuana plants" as used in the guideline includes only living plants, he cites *United States v. Foree,* 43 F.3d 1572, 1581 (11th Cir.1995) (holding that marijuana cuttings and seedlings are not "marijuana plants" for purposes of § 2D1.1 unless they have "some readily observable evidence of root formation") (quoting *United States v. Edge,* 989 F.2d 871, 877 (6th Cir.1993)).[4] Under Shields's reading, the equivalency provision of § 2D1.1 applies only to marijuana growers who are apprehended prior to harvest. *See United States v. Stevens,* 25 F.3d 318, 322-23 (6th Cir.1994) (holding that the equivalency provision only applies when live marijuana plants are found); *United States v. Blume,* 967 F.2d 45, 49 (2d Cir.1992) (same).

The plain language of the equivalency provision and the statute on which it was based lead us to reject Shields's interpretation. *See* U.S.S.G. § 2D1.1; 18 U.S.C. § 841(a). By its own terms, the equivalency provision applies to "offense[s] involving marijuana plants." Similarly, the statute sets mandatory

---

[4]Because we sit en banc, we are not bound by the decisions of prior panels. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (establishing the rule that Eleventh Circuit panel decisions may only be overruled by the en banc court).

minimum sentences for violations of § 841(a) "involving" a specified number of "marijuana plants." Nothing in the text of § 2D1.1 or § 841(b) suggests that their application depends upon whether the marijuana plants are harvested before or after authorities apprehend the grower. *United States v. Wilson,* 49 F.3d 406, 410 (8th Cir.), *cert. denied,* --- U.S. ----, 116 S.Ct. 384, 133 L.Ed.2d 306 (1995) (relying on the plain language of § 2D1.1 in rejecting the argument that the equivalency provision only applies to live plants seized); *United States v. Haynes,* 969 F.2d 569, 571-72 (7th Cir.1992) (same).

An interpretation of § 2D1.1 that is not supported by the text of the guideline and depends on a state of affairs discovered by law enforcement authorities is contrary to the principle that guideline ranges are based on relevant conduct. *See* U.S.S.G. § 1B1.3. The guidelines broadly define "relevant conduct," which includes, among other things, "*all* acts and omissions committed ... by the defendant ... that occurred during the commission of the offense of conviction." *Id.* (emphasis added). We hold that, where there is sufficient evidence that the relevant conduct for a defendant involves growing marijuana plants, the equivalency provision of § 2D1.1 applies, and the offense level is calculated using the number of plants. *Accord United States v. Wegner,* 46 F.3d 924, 928 (9th Cir.1995); *Wilson,* 49 F.3d at 410; *Haynes,* 969 F.2d at 572.[5]

---

[5]Shields's reliance on *Foree* is misplaced. In that case, the defendants' offenses involved marijuana cuttings and seedlings, and we were required to decide whether marijuana cuttings and seedlings were "marijuana plants" within the meaning of § 2D1.1. 43 F.3d at 1579. We are not required to further

There is more than sufficient evidence that Shields's relevant conduct included cultivating and harvesting a first crop of marijuana plants in addition to the growing crop found by government agents.[6]  In fact, there is no real dispute concerning this issue.  Shields himself testified that the dead root systems were the remains of marijuana plants that he cultivated and harvested.

AFFIRMED.

KRAVITCH, Circuit Judge, concurring:

Although the three judge panel in this case found itself bound by *United States v. Foree,* 43 F.3d 1572 (11th Cir.1995), and *United States v. Osburn,* 955 F.2d 1500 (11th Cir.), *cert. denied,* 506 U.S. 878, 113 S.Ct. 223, 121 L.Ed.2d 160 (1992), having considered the case en banc I agree with the opinion of the court.  I write separately to alert sentencing courts to a potential problem in applying the rule established by this opinion.

There could be a double-counting problem with punishing defendants both for growing marijuana plants based on the number of plants involved, and for possessing the marijuana derived from

define the term "marijuana plants" in this case, because, as we discuss below, there is sufficient evidence that Shields's offense involved a first crop of marijuana plants that were live and mature.

[6]Shields's involvement with the first crop of marijuana plants was not part of the manufacturing conspiracy for which he was convicted.  The government conceded at sentencing that it could not show by a preponderance of the evidence that O'Reilly, Shields's sole co-conspirator, was in any way connected to the first crop.  But Shields's manufacture of the first crop is conduct that is relevant to the determination of his guideline range because it was "part of the same course of conduct or common scheme or plan as the offense of conviction."  U.S.S.G. § 1B1.3(a)(2).

those same plants based on the weight of the dry leaf marijuana possessed. We should be concerned in cases like this one that the government, upon finding both harvested, rotting plants and a quantity of dry leaf marijuana derived from those plants, might count the same marijuana against the defendant twice: once by using the dead plants as evidence of previously living plants in sentencing for growing, and again by weighing the dry leaf marijuana in sentencing for possession. This problem does not arise if defendants can be sentenced for growing based only on the number of live plants discovered by the police; thus, the panel opinion in *Shields* had the virtue of establishing a prophylactic rule. I assume, however, that sentencing courts will be able to monitor and prevent such double-counting on a case-by-case basis (and that law enforcement officials and prosecutors will not intentionally overreach).