United States Court of Appeals,

Eleventh Circuit.

No. 93-9270.

UNITED STATES of America, Plaintiff-Appellee,

v.

Maurie Wade SHIELDS, a/k/a Chip, Defendant-Appellant.

April 10, 1995.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:93-CR-248-01-RCF), Richard C. Freeman, Judge.

Before KRAVITCH, Circuit Judge, GODBOLD and RONEY, Senior Circuit Judges.

KRAVITCH, Circuit Judge:

The issue presented in this case is whether admittedly dead "root systems" remaining from marijuana plants harvested weeks or months before police seizure may be counted along with seized living plants as marijuana "plants" for sentencing purposes. We hold that dead, harvested root systems are not "plants" within the meaning of 21 U.S.C. § 841(b) and the "equivalency provision" of U.S.S.G. § 2D1.1(c), n.*, ¶ 5. Accordingly, we VACATE the defendant's sentence and REMAND for resentencing.

I.

Appellant Maurie Shields and Joseph O'Reilly[1] grew marijuana in a house the two were leasing in Marietta, Georgia. When law enforcement agents searched the house, they found 27 live marijuana plants. They also discovered a trash can containing 26 dead, crumbling roots, each attached to a small portion of the stalk

---

[1]O'Reilly is not a party to this appeal.

("root systems"), remaining from previously-harvested plants. Shields and O'Reilly each pleaded guilty to charges of conspiracy to manufacture marijuana in violation of 21 U.S.C. §§ 841 and 846.

At his sentencing hearing, Shields testified that what the agents counted as 26 separate dead plants were actually the remains of 6 to 8 multi-stalked plants that had been split apart during harvesting, leaving each stalk with a partial root system. Shields argued that he thus should be sentenced on the basis of only 33 to 35 marijuana plants. After viewing a videotape of the seized root systems being inspected and counted by the agents at the scene, the district court specifically discredited Shields's testimony and credited the testimony of the law enforcement officers who conducted the search. The court accordingly found that the root systems were derived from 26 predecessor marijuana plants.[2]

The district court noted that Shields's codefendant, O'Reilly, had been sentenced on the basis of only the 27 live marijuana plants (within the Guideline-mandated sentencing range of 10-16 months) because the government conceded that it could not show, even by a preponderance of the evidence, that O'Reilly conspired with Shields to grow the 26 previously-harvested plants. The district court commented that if Shields were held accountable for 53 plants, his Guideline-mandated sentencing range would be 33-41 months,[3] and that it was troubled by the threefold disparity

---

[2]After an independent review of the record, we cannot say that the district court's determination of the number of predecessor plants from which the dead root systems came was clearly erroneous. *See* 18 U.S.C. § 3742(e).

[3]The Sentencing Guidelines require significantly longer sentences for offenses involving fifty or more plants. *See*

between O'Reilly's and Shields's sentences.  Nevertheless, because it concluded the 26 root systems were plainly marijuana plants under the sentencing statute and the Guidelines, the court sentenced Shields to 33 months imprisonment, the lowest permissible Guideline alternative.

## II.

### A.

On appeal, Shields contends that the district court erred in counting *any* of the 26 root systems as marijuana plants for the purpose of sentencing.  Because this claim differs somewhat from the argument Shields posited in the district court,[4] we initially must determine whether Shields may raise it for the first time in this court.

The treatment of sentencing objections in this circuit is governed by *United States v. Jones,* 899 F.2d 1097, 1102-03 (11th Cir.), *cert. denied,* 498 U.S. 906, 111 S.Ct. 275, 112 L.Ed.2d 230 (1990), *overruled on other grounds, United States v. Morrill,* 984 F.2d 1136, 1137 (11th Cir.1993) (en banc).  In *Jones,* we required the district courts, after conducting the sentencing hearing, stating their factual findings, applying the Guidelines, and imposing sentence, to "elicit fully articulated objections" to their "ultimate findings of fact and conclusions of law."  *Id.* at 1102.  We noted that "[w]here the district court has offered the

---

U.S.S.G. § 2D1.1(c), n.*, ¶ 5.

[4]In the district court, the dispute centered on whether there were 6-8 or 26 harvested plants, and all parties assumed that however many dead plants the court found to exist would be counted as marijuana plants.

opportunity to object and a party is silent or fails to state the grounds for objection, objections to the sentence will be waived for the purposes of appeal ... [absent] manifest injustice." *Id.* at 1103. As a corollary to this waiver principle, we held that "[w]here the district court has not elicited fully articulated objections following the imposition of sentence, this court will vacate the sentence and remand for further sentencing in order to give the parties an opportunity to raise and explain their objections." *Id.*

Because the district court in this case failed to comply with *Jones,* we ordinarily would vacate the sentence and remand without reaching the merits of Shields's argument. We do, however, have the discretion to consider sentencing objections, notwithstanding a "technical violation of *Jones,*" where "the record is sufficient for meaningful appellate review." *United States v. Cruz,* 946 F.2d 122, 124 n. 1 (11th Cir.1991). *See also United States v. Costales,* 5 F.3d 480, 483 n. 3 (11th Cir.1993) (same). Because this case presents a purely legal question on a complete record, we exercise that discretion here, and consider Shields's appeal on the merits.[5]

B.

21 U.S.C. § 841(b) requires certain minimum mandatory

---

[5]Because the appellants in *Costales* and *Cruz* did not raise *new* sentencing arguments on appeal, those cases are not fully controlling. Nevertheless, the practical considerations animating those decisions counsel their extension to this context. At a minimum, Shields is entitled, pursuant to *Jones,* to a vacatur of his sentence and a remand for resentencing. At his resentencing, Shields would naturally raise the argument he now advances, and the same issue would then be properly presented, on the same record, by a subsequent appeal to this court. Judicial economy would be plainly disserved by such a procedure.

sentences for convictions of controlled substance offenses,[6] based on either (i) the weight in kilograms of "a mixture or substance containing a detectable amount of marijuana" *or* (ii) the number of "marijuana plants regardless of weight." The Sentencing Guidelines elaborate this statutory scheme. U.S.S.G. § 2D1.1(c) sets the base offense level for certain drug offenses on the basis of "marihuana" weight in kilograms. The so-called "equivalency provision" then equates each plant to a kilogram of marijuana if the offense involved fifty or more plants, and to 100 grams of marijuana if the offense involved fewer than fifty plants.[7]

Although 21 U.S.C. § 802(16) defines "marihuana," neither the statute nor the current Guidelines define "marihuana plant." [8] Implicit in our recent decision in *United States v. Foree,* 43 F.3d 1572 (11th Cir.1995), however, is the proposition that *clearly dead* vegetable matter is not a plant.[9] In *Foree,* we concluded that new

---

[6]*See* 21 U.S.C. § 841(a).

[7]U.S.S.G. § 2D1.1(c), n.*, ¶ 5 provides: "In the case of an offense involving marihuana plants, if the offense involved (A) 50 or more marihuana plants, treat each plant as equivalent to 1KG of marihuana; (B) fewer than 50 marihuana plants, treat each plant as equivalent to 100G of marihuana. *Provided,* however, that if the actual weight of the marihuana is greater, use the actual weight of the marihuana."

[8]The Sentencing Commission has recently suggested amending U.S.S.G. § 2D1.1 to define a "plant" as "an organism having leaves and a readily observable root formation." *See Proposed Amendments to the Federal Sentencing Guidelines,* 56 Crim.L.Rep. (BNA) 2063, 2088, 2091 (Jan. 11, 1995). The 26 root systems seized in this case lacked leaves, and would therefore not be counted as plants under this proposed definition.

[9]*Accord* 1 Gerald T. McFadden, Judy C. Clarke, & Jeffrey L. Staniels, *Federal Sentencing Manual* ¶ 8.05[1][b] at 8-43 (1994) ("A [marijuana] plant stops being a plant when it is harvested.").

cuttings and seedlings are not marijuana plants until they develop "some readily observable evidence of root formation." *Id.* at 1581. In so holding, we explicitly rejected the less-stringent proposal that a cutting may be a plant if "it appears to the court to be a growing and living thing, even if its root structures are not yet formed." *Id.* (quoting government's brief). *Foree* therefore treats evidence of life as a necessary (but alone insufficient) prerequisite of "planthood," and its reasoning counsels rejection of the government's converse contention here that dead marijuana remains are plants simply because they have roots.[10]

*Foree* suggests that the 26 root systems were not plants; other circuit precedent explains how harvested former plants should be treated at sentencing. In *United States v. Osburn,* 955 F.2d 1500, 1509 (11th Cir.), *cert. denied,* --- U.S. ----, ----, 113 S.Ct. 223, 290, 121 L.Ed.2d 160, 215 (1992), we held that

> [u]nder section 841(b), a grower who is arrested immediately after she has harvested her marijuana crop will be sentenced according to the [actual] weight of the marijuana yielded by the crop, ... [y]et a similarly situated grower, arrested immediately prior to harvesting his crop, will be sentenced on a [presumed] 1000-gram-per-plant basis [pursuant to the

---

[10]21 U.S.C. § 802(16) does not compel a contrary result. The statute defines "marihuana," for sentencing purposes, *inter alia* as "all parts of the plant Cannabis sativa L., whether growing or not ... [but] not includ[ing] the mature stalks of such plant." The government contends that the reference to "growing" marijuana implies that this definition embraces plants, and that the simultaneous reference to "not [growing]" marijuana therefore requires that both dead and live plants must be counted under § 841(b). The explicit exclusion of mature stalks from this statutory provision, however, implies that it does not attempt to define the term "marijuana plant" (as distinguished from "marihuana"), and is therefore inapposite. Rather, the reference to "growing" marijuana contemplates immature cuttings without roots that are not plants under *Foree.*

"equivalency provision" of U.S.S.G. § 2D1.1(c), n.*, ¶ 5].[11] Other decisions in this circuit have noted the same anomaly in the sentencing regime. *See Foree,* 43 F.3d at 1581 ("[U]nder [the existing] sentencing scheme, the government undeniably benefits if it catches a grower before harvest, for after harvest the defendant would have to be sentenced according to the (much lower) actual weight of the usable portions of the plant (i.e. not stalks or sterilized seeds).") (emphasis omitted); *United States v. Bradley,* 905 F.2d 359, 361 (11th Cir.1990) ("When marijuana is discovered in dry leaf form after harvest, the weight measurement is appropriate.").[12]

## C.

The government urges that our precedents are distinguishable

---

[11]This language is holding rather than dictum because a determination that the statutory scheme in fact favored growers who have just completed their harvest over growers who have not yet harvested their marijuana plants was a necessary predicate to the *Osburn* court's subsequent consideration of the defendants' constitutional challenge to that sentencing distinction. *See Jean v. Nelson,* 472 U.S. 846, 854, 105 S.Ct. 2992, 2996-97, 86 L.Ed.2d 664 (1985) (prior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision).

[12]The government contends, relying on *United States v. Lewis,* 762 F.Supp. 1314 (E.D.Tenn.), *aff'd,* 951 F.2d 350 (6th Cir.1991) (table), that the 1988 amendment to § 841(b) made "the entire plant in effect a mixture or substance containing marijuana" so that "both dead and alive, harvested and unharvested" plants are marijuana plants under the statute. *Id.* at 1317. If that were the effect of the amendment, however, the equivalency provision in U.S.S.G. § 2D1.1(c) would be superfluous—instead of converting each live plant to 1 kg or 100 g of marijuana, the whole plant would simply be weighed as a "mixture or substance containing a detectable amount of marijuana" under § 841(b). This result does not appear to be what Congress intended in introducing *alternative* "marihuana plant" number and "mixture or substance" weight methods for determining mandatory sentences.

because the instant case involves manufacturing and conspiracy to manufacture plants rather than possession of marijuana plants with intent to distribute.[13] Because Congress intended to treat "plant growers more harshly than those convicted of [distribution] marijuana crimes," *Osburn,* 955 F.2d at 1509, the government argues that growers of plants and parties to conspiracies to grow plants should not benefit from the happenstance of the timing of the harvest. Instead, the government suggests, relying on *United States v. Haynes,* 969 F.2d 569 (7th Cir.1992) and its progeny,[14]

---

[13]At oral argument, the government contended that the 26 dead plants were grown during the course of the conspiracy between O'Reilly and Shields, and hence were part of the base offense level calculation because they were part of Shields's offense of conviction. In the district court, however, the government conceded that it could not show, even by a preponderance of the evidence, that O'Reilly was in any way connected with growing the 26 dead plants. In light of this concession, we are hard-pressed to see how the 26 plants could have been grown during the course of the O'Reilly/Shields *conspiracy.*

Nevertheless, Shields's individual act of "manufacturing" the 26 dead plants was "part of the same course of conduct or common scheme or plan as the offense of conviction [i.e., the conspiracy to manufacture]," U.S.S.G. § 1B1.3(a)(2), and should still be accounted for in sentencing. The government now argues that, in *both* manufacturing and conspiracy to manufacture cases, defendants should be responsible for the number of dead harvested plants produced (even if the dry leaf weight measure is proper in possession cases). While we ultimately disagree with this proposed distinction, the fact that the 26 dead plants were not part of the manufacturing conspiracy is not *ipso facto* fatal to this argument, as the act of manufacturing was "relevant conduct."

[14]*See United States v. Atkinson,* 15 F.3d 715, 719-20 (7th Cir.1994) (following *Haynes* ); *United States v. Young,* 997 F.2d 1204, 1209 (7th Cir.1993) (same); *United States v. Montgomery,* 990 F.2d 266, 269 (7th Cir.1993) (same); *but cf. United States v. Young,* 34 F.3d 500, 506 (7th Cir.1994) (marijuana manufacturing co-conspirator who merely brokered sale of certain quantity of consumable marijuana and was not part of conspiracy when plants were grown had to be sentenced on basis of weight of

that it should be permitted to show by circumstantial evidence how many already-harvested, long-dead plants were grown by defendants charged with manufacturing or conspiracy to manufacture during the time-frame alleged in the indictment.[15]   Alternatively, the government argues that because the object of Shields's conduct was to grow a certain number of plants, he should be held accountable for what he intended to accomplish.   [16]   Under either theory, according to the government, the district court properly sentenced Shields by applying the 1 kg/plant equivalency to the number of dead plants.[17]

harvested dry leaf for which he bargained because he could not have reasonably foreseen underlying number of plants grown by conspiracy).  All of these cases involved Haynes's coconspirators.

[15]The *Haynes* court reasoned that the last sentence of the U.S.S.G. § 2D1.1(c), n.*, ¶ 5 equivalency provision (the "proviso") required that "the weight calculated with the [1 kg/plant] conversion factor," based on the number of dead, harvested plants, should be used "if it is greater than the actual weight of the consumable marijuana" produced. *Id.* at 572. If courts must "automatically base sentence[s] upon the actual weight of consumable product" once the plants have been harvested, the court opined, the proviso "would be superfluous." *Id.*

[16]*See Atkinson,* 15 F.3d at 719-20 (object of conspiracy was not simply to produce a quantity of dry leaf marijuana but also to grow underlying number of plants, and defendant should therefore be sentenced based on number of harvested plants rather than amount of consumable marijuana produced); *United States v. Phillips,* No. 94-5140, 1995 WL 82503 at *5-*6 (4th Cir. Feb. 27, 1995) (per curiam) (2-1) (200 seeds that never germinated and died after planting could be counted as marijuana plants in sentencing of manufacturing conspiracy defendant because he *intended* to grow plants); *cf.* U.S.S.G. § 2D1.1, comment. (n. 12) (drug quantity in conspiracy cases calculated, in certain instances, by reference to amount defendant intended to produce).

[17]*Accord United States v. Wilson,* --- F.3d ----, ----, 1995 WL 82877 at *3 (8th Cir.1995) (following Seventh Circuit; manufacturing conspiracy defendant could be sentenced by applying

The government, however, overlooks the fact that the defendants in *Osburn* were convicted of conspiracy to manufacture marijuana plants, and the defendants in *Bradley* were convicted of manufacturing marijuana plants. *See Osburn,* 955 F.2d at 1502; *Bradley,* 905 F.2d at 361. Our decisions therefore contemplate the use of actual post-harvest weight of consumable marijuana, rather than presumed weight derived from the number of harvested plants, for sentencing in manufacturing and conspiracy to manufacture, as well as possession, cases. *See also United States v. Young,* 39 F.3d 1561, 1571-72 (11th Cir.1994) (implicitly approving, without comment, the sentencing of members of marijuana growing and distribution conspiracy based on weight of dry leaf produced rather than number of plants grown).[18]

_____

the 1 kg/plant equivalency provision to number of previously-harvested, now dead plants); *United States v. Wegner,* --- F.3d ----, ----, 1995 WL 32008 at *3 (9th Cir.1995) (declining to follow *Osburn* and following *Haynes);* manufacturing defendant properly sentenced based on circumstantial evidence of number of plants grown over course of operation because "one kilogram conversion ratio applies even when live plants are not seized"); *see also United States v. Lewis,* No. 91-5729, 951 F.2d 350 (table), 1991 WL 278965 at *2 (6th Cir. Dec. 30, 1991) (20 dead root balls could be counted as marijuana plants for sentencing because they "were evidence that [defendant] had manufactured those twenty plants during the relevant period" charged in the indictment), *aff'g* 762 F.Supp. 1314, 1317 (E.D.Tenn.1991) ("neither the statute nor the Guidelines makes any distinction between live and dead plants or between harvested and unharvested plants"); *cf. United States v. Murphy,* 979 F.2d 287, 290 (2nd Cir.1992) (dictum) ("[I]f there is proof that a defendant has *recently* harvested ... and the marijuana in his or her possession is the fruit of those poisonous plants, then that individual should be sentenced as if the plants had not yet been harvested.") (emphasis added).

[18]*Accord United States v. Stevens,* 25 F.3d 318, 321-23 (6th Cir.1994) (following *Osburn;* declining to follow *Haynes* ) (equivalency provision applies only to live plants, and dead plants must be accounted for based on weight of possessed or distributed dry leaf marijuana produced from them); *United*

Furthermore, *Foree* explicitly rejected the contention that sentencing calculations in marijuana plant cases are guided solely by reference to the defendant's intent. *See Foree,* 43 F.3d at 1581 n. 13. In such cases, the conspirators intend both to grow plants *and* to harvest them and produce dry leaf marijuana. The fact that § 841(b) creates *alternative* plant number and marijuana weight sentencing regimes implies that growers should not continue to be punished for plants when those plants cease to exist. *Accord Stevens,* 25 F.3d at 322-23 (canvassing legislative history of § 841(b) and concluding that dichotomous sentencing scheme requires transition from plant number to marijuana weight method after harvest); *but see Wegner,* --- F.3d at ---- (statute does not require that "reliable evidence as to plants, even if not seized, must be for sentencing purposes transformed into evidence of a proportionate amount of dry harvested marijuana").

Because we do not agree that *Foree, Osburn,* and *Bradley* are distinguishable from this case, the government's reliance on *Haynes* and *Atkinson* is unavailing.[19]

---

*States v. Blume,* 967 F.2d 45, 49 (2nd Cir.1992) (following *Osburn* ) (same); *see also United States v. Curtis,* 965 F.2d 610, 616 (8th Cir.1992) (noting district court's elimination, at sentencing of manufacturing conspiracy defendant, of "those [marijuana] plants which appeared to be dead or dying").

[19]We are, in any event, unpersuaded by the reasoning of *Haynes.* The third sentence of U.S.S.G. § 2D1.1, comment. (backg'd), ¶ 4 (Nov. 1994) provides: "*For cases involving fewer than fifty plants,* the Commission has adopted an equivalency of 100 grams per plant, or the actual weight of the usable marijuana, whichever is greater" (emphasis added). The Background Commentary therefore makes clear that the Sentencing Commission intended the equivalency provision proviso, on which *Haynes* primarily relied, to apply only in cases involving fewer than fifty plants. Because *Haynes* involved more than fifty plants, the proviso could not have mandated the Seventh Circuit's

### III.

We therefore reaffirm that dead, harvested root systems are not marijuana plants for sentencing purposes irrespective of whether the defendant is convicted of possession, manufacturing, or conspiracy to manufacture marijuana plants.[20] We leave it to the district court to decide, in the first instance, how the 26 dead root systems should be accounted for in sentencing in this case (as they cannot be counted as plants).[21] Accordingly, we VACATE

---

conclusion that dead marijuana plants may be resurrected for sentencing. *Cf. Hadfield v. United States,* No. 92-1508, 979 F.2d 844 (table), 1992 WL 340307 at *6 n. 2 (1st Cir. Nov. 20, 1992) (characterizing as "erroneous" the proposition that "a prosecutor can use the drug equivalency tables in the Sentencing Guidelines to convert an offender's possession of dried marijuana into possession of marijuana plants").

[20]We note, however, that our holding is a limited one. In this case, the 26 root systems were both clearly harvested and clearly dead. We express no opinion on any of the following: (i) at what point a plant becomes "dead"; (ii) how a dead plant, either still planted, or already removed from the soil, should be accounted for if it has not yet been harvested; and (iii) if dead but harvested plants are treated differently from dead but unharvested plants, at what point a plant becomes "harvested." *Compare United States v. Cody,* 7 F.3d 1523, 1527 (10th Cir.1993) (counting "991 growing plants and 37 drying plants" without discussion of whether the "drying" plants were either harvested or dead). Furthermore, we do not decide whether circumstantial evidence of the number of previously-harvested plants may be introduced for non-sentencing purposes. *See United States v. Lennick,* 18 F.3d 814, 820 (9th Cir.1994) (government entitled to rely, at trial, on circumstantial evidence to estimate number of plants manufactured and harvested during offense period, where indictment charged specific number of plants), *cert. denied,* --- U.S. ----, 115 S.Ct. 162, 130 L.Ed.2d 100 (1994).

[21]Decisions of the Second and Sixth Circuit suggest one possible method. *See Stevens,* 25 F.3d at 322-23 ("The proper way to calculate the quantity of marijuana for sentencing ... is to apply the [equivalency] provision only to live marijuana plants found. Additional amounts for dry leaf marijuana that a defendant possesses—*or marijuana sales that constitute "relevant conduct" that has occurred in the past*—are to be added based upon the actual weight of the marijuana and not based upon the number of plants from which the marijuana was derived.") (emphasis

Shields's sentence and REMAND to the district court for resentencing and other proceedings consistent with this opinion.

added); *Blume,* 967 F.2d at 49–50 (district court must sentence defendant based on average yield of dry leaf produced by dead, harvested plants over course of growing conspiracy).